In the Matter of: **CRYSTAL OIL COMPANY, Debtor.**

**HALLIBURTON SERVICE, A DIVISION OF HALLIBURTON COMPANY, Appellant,**

v.

**CRYSTAL OIL COMPANY, et al., Appellees.**

No. 87–4942.

United States Court of Appeals, Fifth Circuit.

Sept. 1, 1988.

Eugene R. Preaus, Mark B. Meyers, Robert B. McNeal, New Orleans, La., David Bennett, Dallas, Tex., for appellant.

P. Steven Kratsch, Atlanta, Ga., for Official Committee of Unsecured Creditors.

Keith A. Jones, Washington, D.C., John King, Charles H. Still, Curtis Hugg, Houston, Tex., James Jeter, Fulbright & Jaworski, Shreveport, La., for Crystal Oil.

Jarrell D. McDaniel, Sabrina Cox Little, Houston, Tex., Glenn L. Langley, Shreveport, La., for Bankers Trust Co.

Before GEE, DAVIS and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Halliburton Services (Halliburton) appeals the district court's dismissal of its appeal from the bankruptcy court's order confirming a Chapter 11 reorganization of Crystal Oil Company (Crystal). We dismiss the appeal.

## I.

In October 1986, Crystal Oil Co. filed a voluntary Chapter 11 bankruptcy petition. Bankers Trust Company (Bankers Trust) was Crystal's senior secured and largest creditor. Crystal owed Bankers Trust $43,000,000 on a note due in 1990; Bankers Trust also faced contingent liability of $32,000,000 on letters of credit it issued to Halliburton and others guaranteeing Crystal's performance on certain contracts. Bankers Trust held a first lien on all of Crystal's oil and gas properties and other assets to secure Crystal's liability on its 1990 note and contractual obligations secured by Bankers Trust's letters of credit. Crystal also owed Halliburton $12,000,000 on a note due in 1987. Halliburton's note was secured by a lien on Crystal's oil and gas properties, but the lien was expressly subordinated to the Bankers Trust lien. In addition, Crystal owed several million dollars to unsecured creditors and faced liability on various kinds of debt and equity securities.

All creditors except Halliburton and Bankers Trust agreed to Crystal's first proposed reorganization plan. As Crystal's senior secured creditor, Bankers Trust held a priority claim for the present value of the collateral securing its loans. The extent of Bankers Trust's priority claim depended on whether the bankruptcy court treated its contingent liability on the letters of credit as a fixed claim entitled to priority status.

In an effort to promote a reorganization plan and resolve the letter of credit dispute, Bankers Trust ultimately made several important concessions that benefitted Halliburton and other creditors. Bankers Trust approved a $2,000,000 payment by Crystal to Halliburton, approved a $4,000,000 payment to unsecured creditors and allowed its rights to be subordinated to the purchasers of certain newly issued debt securities. Bankers Trust also accepted a new note with a lower rate of interest in exchange for its old note. Bankers Trust made these concessions and agreed to an amended plan on the express condition that its contingent letter of credit claim be given priority. All creditors except Halliburton agreed to the amended plan. In December 1986 the bankruptcy court confirmed the amended plan over Halliburton's objection.

Under the confirmed Chapter 11 plan, Bankers Trust and Halliburton each received new notes to replace their old ones and retained their relative lien priorities. The plan also applies eighty-seven percent of Crystal's future available cash flow to Bankers Trust's note. Crystal pays the remaining available cash flow into an escrow account. Bankers Trust was granted a first lien on the escrowed funds to secure its contingent letter of credit obligations; Halliburton received a subordinate lien to secure its note. After the Bankers Trust

note is paid in full and the escrow account balance equals the then-outstanding letters of credit, Halliburton will receive 100% of the available cash flow. Halliburton may draw funds from the escrow account immediately, subject to the condition that it replace those funds if this is necessary to indemnify Bankers Trust for losses on the letters of credit.

Despite its objections to the plan, Halliburton did not attempt to stay the bankruptcy court's order pending appeal. The reorganization plan thus became effective in January 1987 and distribution under the plan began. Crystal immediately paid $2,000,000 to Halliburton and $2,500,000 to Bankers Trust. Crystal cancelled $63,000,-000 in intercompany debt and paid over $4,000,000 to unsecured creditors. By November 1987, Crystal had issued over $200,000,000 worth of debt and equity securities in exchange for previously outstanding debt and equity obligations. Crystal's new securities were registered with the SEC and were publicly traded by November of 1987. By November 1987, approximately $1,500,000 worth of allowed priority claims were paid or provided for.

In November 1987, the district court granted appellees' motion to dismiss the appeal as moot on grounds that the Chapter 11 plan had been substantially consummated, see 11 U.S.C. § 1101(2), and thus it could not grant effective relief. The district court alternatively held that the appeal could be dismissed on equitable grounds.

## II.

Halliburton urges us to: (1) increase the interest rate on Crystal's new note to Halliburton from 13% to 18%, the default rate on the old note; and (2) disallow Bankers Trust's contingent claim on the letters of credit, or reallocate to Halliburton a portion of Crystal's cash flow now going to Bankers Trust. Halliburton asserts that these requests concern only Crystal's future actions and will not affect assets already distributed under the reorganization plan. It further asserts that this requested relief will have no substantial adverse effect on parties who are not before this court. Based on these assertions, Halliburton argues that effective judicial relief is possible and the appeal is not moot. *Matter of Sun Country Development Inc.*, 764 F.2d 406, 407 n. 1 (5th Cir.1985). We doubt that effective relief is possible, and conclude that common sense and equitable considerations require dismissal of this appeal. See *In re AOV Industries, Inc.*, 792 F.2d 1140, 1149 (D.C.Cir.1986).

Halliburton concedes that increasing the interest rate on its note from 13% to 18% would affect nonparties and other creditors. Halliburton claims, however, that the effect would be de minimis. According to appellees' uncontested estimates, increasing the interest rate on Halliburton's note would cost Crystal an additional $400,000 per year. That is not de minimis.

Halliburton's proposed solution to the letters of credit issue is not as simple as it suggests. As noted above, Bankers Trust made several concessions to prompt court approval of a reorganization plan that would recognize Bankers Trust's claim for any losses it may suffer on the letters of credit. Bankers Trust (1) approved a $2,000,000 payment by Crystal to Halliburton; (2) approved a $4,000,000 payment by Crystal to unsecured creditors; (3) allowed its rights to be subordinated to the purchasers of new bonds; and (4) accepted a new note with a lower interest rate in exchange for the existing note.

In effect, Halliburton wants to enjoy these concessions while it grabs additional benefits at Bankers Trust's expense. This is fundamentally unfair to Bankers Trust. If we accept Halliburton's argument, Bankers Trust must abide by the earlier concessions it made to obtain court approval of a plan, and then relinquish the benefits of these sacrifices. We decline to deprive Bankers Trust of the benefits it bargained for without giving Bankers Trust a chance to reevaluate the concessions it made to get them. We cannot give Bankers Trust this right without jeopardizing the entire plan should Bankers Trust retract major concessions. Moreover, Bankers Trust bondholders and other creditors and customers of Crystal will certainly suffer widespread prejudice if the present plan is scrapped. Finally, loss of this plan would disrupt a very successful reorganization. Chances

are good that granting Halliburton the relief it requests would destroy the present plan and require the bankruptcy court to start anew. See *Miami Center Ltd. Partnership v. Bank of New York*, 820 F.2d 376, 380 (11th Cir.1987).

If Halliburton objected to the bankruptcy court's plan, it should have sought a stay so the reviewing court could consider the plan's propriety before implementation led third parties to make commitments in reliance on the plan. An appeal may be dismissed when an appellant has made no effort to obtain a stay and has permitted "such a comprehensive change of circumstances to occur as to render it inequitable" for the appellate court to reach the merits of the appeal. *In re Roberts Farms*, 652 F.2d 793, 798 (9th Cir.1981); see also *In re AOV Industries, Inc.*, 792 F.2d at 1147–48; *In re Information Dialogues, Inc.*, 662 F.2d 475, 476–77 (8th Cir.1981).

We do not hold that a stay of a bankruptcy court's action is a per se requirement for relief on appeal. But given Halliburton's failure to seek a stay, the comprehensive change of circumstances that has occurred, and the requested relief's impact on the plan, it would be plainly inequitable for this court to consider the merits of Halliburton's appeal. We therefore dismiss the appeal.

APPEAL DISMISSED.