In re BLOCK SHIM DEVELOPMENT COMPANY—IRVING, Debtor.

RONIT INCORPORATED and Michael A. Block, Appellants,

v.

BLOCK SHIM DEVELOPMENT COMPANY—IRVING, et al., Appellees.

Civ. A. No. CA3–89–2471–D.
Bankruptcy No. 389–30670–RCM–11.

United States District Court,
N.D. Texas,
Dallas Division.

April 10, 1990.

Christopher M. Weil and Anthony A. Petrocchi of Weil & Petrocchi, P.C., Dallas, Tex., for appellants.

J. Christopher Luna of Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for appellee Stemson Corp.

David W. Elrod of Calhoun, Gump, Spillman & Stacy, Dallas, Tex., for appellee Ronville, Inc.

FITZWATER, District Judge:

In this appeal from a bankruptcy court order confirming a plan of reorganization, the court must decide whether appellants' failure to obtain a stay of the order precludes appellate review. For the reasons set forth, the court dismisses the appeal in part.

I

Appellee Block Shim Development Company—Irving ("Block Shim") was placed in chapter 11 bankruptcy following an involuntary petition. Block Shim is a Texas general partnership composed of appellant

Ronit Incorporated ("Ronit") and appellees Stemson Corporation ("Stemson") and Ronville, Inc. ("Ronville"). Ronit is owned 100% by appellant Michael A. Block ("Block"). Following the filing of proofs of claim, Stemson proposed a second amended plan of reorganization for Block Shim. The bankruptcy court conducted a hearing and confirmed the plan over the objections of appellants Ronit and Block.

Appellants appeal the confirmation order on six grounds. They argue the bankruptcy court clearly erred in finding: (1) that the plan was accepted by the creditors and equity security holders as required by law; (2) that the plan met the requirements of and was confirmable pursuant to 11 U.S.C. § 1129(b); (3) that full disclosure had been made with respect to persons acquiring property and affiliates of the debtor; (4) that at least one class of impaired claims, excluding insiders, had accepted the plan; (5) that the plan was proposed in good faith and not by any means forbidden by law; and (6) that each holder of a claim or interest had accepted the plan or would receive or retain under the plan property of a value not less than the amount the claimant would have received had Block Shim been liquidated under chapter 7. Appellants ask the court to reverse the order confirming the plan and to enter judgment denying confirmation. In a responsive pleading filed with the court, appellants appear to request in the alternative that the court at least reverse the portions of the plan that modify the Block Shim partnership agreement.[1]

Appellants timely appealed the bankruptcy court's confirmation order but neither sought nor obtained a Fed.R.Bankr.P. 8005[2] stay of the order. Appellees move to dismiss the appeal, contending the appeal is now moot or that it would be inequitable or contravene public policy to grant appellate relief after the plan has been substantially consummated and comprehensive changes have occurred.

## II

### A

#### 1

When a party who has been unsuccessful in the bankruptcy court fails to obtain a Rule 8005 stay of an order approving a plan of reorganization, the ensuing appeal may be dismissed on mootness grounds. "With respect to the appeal of a confirmed reorganization plan, it is generally settled that a court should dismiss an appeal as moot when the plan has been 'so substantially consummated that effective judicial relief is no longer available.'" *Huddleston v. Nelson Bunker Hunt Trust Estate*, 109 B.R. 197, 200 (N.D.Tex.1989) (footnote omitted) (quoting *In re Sun Country Dev.*,

1. In their response to appellees' joint motion to dismiss, appellants state:

In any event, the parties necessary for effective relief with respect to modification of the partnership agreement on appeal are before the Court, and the Court is not deprived under the mootness doctrine from effectively granting the relief requested with respect to this particular aspect of the appeal from confirmation of the plan.

Appellants' Resp. Mot. Dis. at 5.

2. Fed.R.Bankr.P. 8005:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court. When an appeal is taken by a trustee, a bond or other appropriate security may be required, but when an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the Government of the United States a bond or other security shall not be required.

*Inc.,* 764 F.2d 406, 407 n. 1 (5th Cir.1985)).[3]

The mootness doctrine is not to be applied in an uncritical manner, sweeping aside all claims on the basis of some that may be incapable of prompting effective appellate relief. The appellate court must instead approach the mootness inquiry with care and skillful precision, pretermitting merits resolution only as to discrete aspects of a plan that have been so substantially consummated that effective relief is unavailable. This principle explains, for example, why courts dismiss reorganization plan appeals in their entirety in some instances, *e.g., In re Crystal Oil Co.,* 854 F.2d 79, 82 (5th Cir.1988); *In re Roberts Farms, Inc.,* 652 F.2d 793, 797–98 (9th Cir. 1981), and in other contexts dismiss but a portion of an appeal, *e.g., In re AOV Indus.,* 792 F.2d 1140, 1149–50 (D.C.Cir.1986); *In re Combined Metals Reduction Co.,* 557 F.2d 179, 194–95 (9th Cir.1977). The D.C. Circuit explained the duty of the appellate court this way:

> In exercising its discretionary power to dismiss an appeal on mootness grounds, a court cannot avoid its obligation to scrutinize each individual claim, testing the feasibility of granting the relief against its potential impact on the reorganization scheme as a whole.

*AOV Industries,* 792 F.2d at 1148.

### 2

In order to decide whether portions or all of the instant appeal should be dismissed, it is necessary to examine in some detail the pertinent provisions of the Block Shim plan of reorganization and the transactions that have occurred pursuant to the plan since confirmation.

The court derives the pertinent background information from the appellate record and from the affidavit of Stemson shareholder Moises Mondlak ("Mondlak"), submitted by appellees in support of their motion to dismiss.[4] In their response to the motion, appellants complain that they are at a disadvantage in refuting the mootness claims. This is so because the Mondlak affidavit describes transactions as to which appellees Stemson and Ronville have not provided appellant Ronit with certain transaction documents. According to appellants, these documents would enable Ronit effectively to analyze, review, and present an accurate picture of the transactions that have occurred.[5] Appellants do not, however, expressly challenge the accuracy or credibility of the Mondlak affidavit and have not filed counteraffidavits. The court need not, therefore, remand the dismissal question to the bankruptcy court for initial determination but may decide the issue on the present briefing and record. *Cf. Huddleston v. Nelson Bunker Hunt Trust Estate,* 102 B.R. 71, 76 (N.D.Tex. 1989) (district court should remand appeal to bankruptcy court for initial determination of mootness question where resolution turns upon disputed controlling facts).

The Block Shim plan divided the partnership's creditors into five classes. Class 1 pertained to administrative claims entitled to priority pursuant to 11 U.S.C. § 507; class 2 to a secured allowed claim of a group of individuals collectively called the "Sandfields;" class 3 to an unsecured allowed claim of Saraband, Inc. ("Saraband") and Mandolin Corporation ("Mandolin"); class 4 to unsecured allowed claims of all other creditors; and class 5 to equity interests and claims of the Block Shim general partners, Stemson, Ronit, and Ronville. All claims in classes 2 through 5 were

---

**3.** The mootness doctrine finds special force in § 363(m) of the Bankruptcy Code. Section 363(m) precludes, even on jurisdictional grounds, *see In re Gilchrist,* 891 F.2d 559, 561 (5th Cir.1990), appellate invalidation of the sale or lease of property acquired pursuant to bankruptcy court authorization and in good faith in the absence of a stay order. The parties do not contend § 363(m) controls in the instant case and the court need not, therefore, consider its application to the present facts.

**4.** Appellees also filed on March 20, 1990 a supplemental affidavit executed by Mondlak. This second affidavit does not alter the result the court reaches today.

**5.** Appellees dispute this contention in their reply in support of the dismissal motion.

impaired. Class 5 creditors were to receive no payment pursuant to the plan.

According to the plan and the appellate record, Block Shim owned seven tracts of land in Dallas County, Texas, totaling approximately 58.925 acres. This property was called the Sandfield Property. The partnership also owned five acres of land known as the Woodall Property. The seven tracts and five acres were located adjacent to each other. Block Shim also owned an easement. The plan provided that four tracts (Nos. 2, 4, 5, and 7) of the seven that composed the Sandfield Property, the five acres that composed the Woodall Property, and the easement were to be sold to Newco, a Texas general partnership composed of Menlo Corporation ("Menlo"), Mandolin, and Saraband. The conveyance was to be made in exchange for $2.7 million, of which $1.5 million was to be paid in cash and $1.2 million was to be satisfied in partnership interests. Block Shim was to retain three of the tracts (Nos. 1, 3, and 6).

The Sandfields had filed a proof of claim that, as of the petition date, sought recovery for $2,114,432.92. Interest on that amount accrued at the rate of $891.42 per day. In satisfaction of the Sandfields' claim, the plan provided that the Sandfields receive from Newco $1.5 million and an additional amount necessary to reduce to $800,000 the amount due to the Sandfields on a $10.054 million note given them by Block Shim in 1983. The plan specified that Block Shim and the Sandfields were to modify the note and deed of trust to renew and extend the balance owed. The Sandfields were to retain liens on the three tracts of land that Block Shim did not convey.

In complete satisfaction of the claims of Saraband and Mandolin, they were to receive, respectively, 30% and 1% partnership interests in Newco. Class 4 unsecured claimants were to be paid net proceeds remaining from the sale of the four tracts from the Sandfield Property, the five acres from the Woodall Property, and the easement. The plan provided that each unsecured creditor was to receive a pro rata distribution based on any claim allowed in accordance with the plan and applicable bankruptcy law. Block Shim was to escrow funds attributable to a disputed or contingent claim until such claim was allowed. Newco was to guarantee that the total amount of $4,000.00 would be available for Class 4 claimants.

The plan provided that the real property to be sold was to be conveyed for $2.7 million without further bankruptcy court hearing or order and free and clear of all liens. Block Shim was permitted to sell the three retained tracts of land (Nos. 1, 3, and 6) without further order of the court if Block Shim complied with a specified payment obligation to the Sandfields or the Sandfields agreed to accept less than full payment.

The plan also provided that, for the duration of the plan, Block Shim's partners were to make periodic capital contributions to service the Sandfield note, as modified. If a partner did not timely pay, it would lose its interest in the reorganized Block Shim. The plan mandated that the Block Shim partnership agreement be modified in three respects to conform to the provisions of the plan of reorganization.

The plan also dictated that Block Shim release claims it had or may have against the Sandfields and that the Sandfields release actual or contingent claims against Block Shim and its partners. Excepted from this provision were claims by the Sandfields related to the modified note and deed of trust executed pursuant to the plan. If Block Shim defaulted on the modified note, the stay would be lifted without notice and the Sandfields would automatically be permitted to pursue appropriate remedies against the three tracts retained by Block Shim. Upon consummation of the plan, the three tracts were to revest in Block Shim pursuant to 11 U.S.C. § 1141(b) unless the tracts had been sold in accordance with the plan.

The plan also contained typical administrative and other provisions and provided for retention of jurisdiction by the bankruptcy court until entry of a final decree or dismissal of the case.

According to the Mondlak affidavit, subsequent to the bankruptcy court's approval of the plan of reorganization Block Shim engaged in the following transactions. Pursuant to the plan, Block Shim sold to Newco the four tracts from the Sandfield Property and the five acres that composed the Woodall Property. Block Shim received $1.5 million cash from Newco as partial consideration for the sale and Newco forgave Block Shim $1.26 million in debt. On the same day Block Shim disbursed this amount to pay down the $10.054 million note given to the Sandfields in 1983. Block Shim also executed an $800,000 promissory note secured by a deed of trust. The Sandfields in turn released their security interest in the Sandfield Property, except as to the three tracts retained by Block Shim, and except as to the deed of trust that secured the modified note. Newco paid an unsecured creditor, Touche Ross & Co., and the administrative expense creditor, the United States Trustee. The Newco partnership was thereafter dissolved and its assets disbursed to its partners. Former partners Saraband and Mandolin entered into a binding agreement with Laredo National Bank ("Laredo National") and conveyed to it a parcel of land that was formerly part of the Block Shim estate. As part of the transaction, certain parties, including appellant Block, received a release of approximately $2.88 million.

### 3

Appellees contend this appeal is moot because appellants did not obtain a stay of the bankruptcy court's order and, in the absence of a stay, Block Shim and others entered into transactions that cannot now be undone. Appellees urge that the sale of the Sandfield and Woodall properties cannot be severed from the plan because the sale provided the funds required by Block Shim to reorganize. According to appellees, the court cannot grant effective relief because it cannot set aside the sale of the properties.

Appellants respond that their appeal should not be dismissed in advance of a merits resolution. They contend the record, when properly viewed, shows the court can grant effective relief. As appellants analyze the evidence, Stemson and Ronville, through their affiliates and insiders, still retain all but one tract of the Sandfield and Woodall properties, which are the primary assets of the debtor. Only the tract conveyed to Laredo National is no longer in their hands. Block Shim presumably has retained the three tracts that the plan expressly provides shall remain with the debtor. Appellants point out that the Mondlak affidavit does not address disposition of the easement, which must be presumed to remain in the hands of Block Shim. Appellants also argue that their complaints about the plan-ordered modifications to the Block Shim partnership agreement are remediable on appeal because the parties necessary for the court to grant relief are before the court.[6]

Appellees argue in reply that appellants want to dismantle piecemeal the plan of reorganization while benefiting from Newco's conveyance of $1.5 million in cash, which Block Shim in turn paid to the Sandfields. According to appellees, appellants seek to enjoy the benefit of Newco's bargain notwithstanding that the court cannot restore Newco—a now dissolved partnership—and Stemson to their former positions without jeopardizing the plan of reorganization.

### 4

■ Appellees' contention that the appeal has been rendered moot by virtue of the substantial transactions undertaken in the absence of a stay is correct in large

---

6. Appellants additionally urge the court not to dismiss this appeal on the more general ground that there is no indication that appellees Stemson and Ronville are unable to respond in damages to Ronit's claims. The court is not entirely clear as to the rationale for this assertion. Assuming, without deciding, that the availability of damages constitutes effective relief sufficient to overcome transactions consummated post-confirmation, appellants have not established that they have a damages claim against Stemson and Ronville in the context of the present appeal. Appellants seek to set aside an order confirming a reorganization plan; they do not appear to seek relief in the form of money damages or for which such damages would be considered an equivalent.

measure. The appellate record amply demonstrates that significant assets of the debtor's estate were conveyed to extinguish the principal claim against the estate and to fund the payment of four of the five classes of creditors.

The class 2 creditor—the Sandfields—lodged a claim against the estate that, as of the petition date, exceeded $2 million.[7] The conveyance of the Sandfield and Woodall properties to Newco enabled Block Shim to extinguish all its debt to the Sandfields except for debt directly related to the three tracts of land retained by Block Shim. Newco's cash payment also facilitated Block Shim's payment of the claims of class 4 unsecured creditors and Newco's ability to satisfy the claim of Touche Ross & Co. and to pay the class 1 unimpaired administrative expense claim of the United States Trustee. Saraband and Mandolin, class 3 creditors, were able to realize proceeds in the Block Shim conveyance to Newco and ensuing sale of one tract of land to Laredo National, which enabled their claim to be satisfied.

It is pellucid from the record that the fuel that powered the Block Shim plan of reorganization is the sale of the four tracts from the Sandfield Property and the five acres from the Woodall Property adjacent thereto. The record makes equally clear that to undermine now the validity of these transactions would create a legal quagmire that would compromise if not gut Block Shim's ability to reorganize.

It is of little moment that portions of the property so conveyed remain in the hands of insiders or affiliates. The only parties before this court are the debtor, appellee Block Shim, its partners, appellant Ronit and appellees Stemson and Ronville, and Ronit's owner, appellant Block. The Sandfields are not parties to the appeal and have acted in reliance on the plan in giving up certain rights in exchange for partial recovery of their rather large claim against the estate. Newco has dissolved and its individual partners are not parties to the

appeal. Nor is Laredo National, to whom was conveyed one tract of land, a party. Accordingly, except to the extent set forth below, the court concludes the instant appeal must be dismissed as moot.

■ To hold that significant portions of the post-confirmation transactions are immune from review on mootness grounds, however, is not to decide that all the property of the estate is unavailable to fashion effective appellate relief. Applying appropriately precise analysis to the instant record, the court determines that some remedies can be accorded by the court.

Appellants Ronit and Block contend on appeal that the plan has dealt with them unfairly and has been overly and unjustifiably generous in its treatment of other equity owners and their insiders and affiliates. Although they find the plan to be invalid on several grounds, they apparently seek singular relief: that the plan of reorganization be modified to reallocate—more equitably in their view—the rights and obligations of the Block Shim partners. Measured against this request, there appear to be two distinct partnership assets that remain available for the purpose of crafting an appellate remedy. It is also possible, as the court explains below, that provisions of the reorganization plan, or certain terms of the plan-modified partnership agreement, that regulate future partnership conduct can be altered to grant appellants greater rights.

The first available asset is composed of the three tracts that were formerly part of the seven-tract, 58.925–acre Sandfield Property. The plan provides that these tracts remain with Block Shim to be held or sold. Assuming appellants are correct on the merits of their appeal, nothing in the record establishes that the court will be unable to reallocate the partners' rights and obligations with respect to these three tracts of land, or to allocate any future profits from the disposition of this property, if the confirmation order is reversed. Neither does the record demonstrate that, by altering the parties' rights with respect to these three discrete tracts, the court will

---

**7.** According to appellees, the Sandfields were Block Shim's "major secured creditors." Appel-

lees' Br. Support Mot. Dis. at 3.

undermine the entire reorganization plan.

Similar analysis applies to a second partnership asset that apparently remains available for granting relief. As appellants point out, the Mondlak affidavit fails to explain the disposition of the easement. Appellants challenged the omission of any reference to the easement in their response to the dismissal motion and appellees did not address the matter in their reply brief. It therefore remains possible to adjust the partners' rights in the easement, if it has not been conveyed pursuant to the plan, without impacting the reorganization scheme.

It is also conceivable that portions of the reorganization plan, or provisions of the plan-modified Block Shim partnership agreement, that govern future partnership conduct can be revised to afford relief to appellants. The plan contemplates that Block Shim will re-emerge from bankruptcy as a going concern. Its general partners are all parties to this appeal. The plan currently requires, for example, that each partner, including appellant Ronit, make periodic capital contributions toward obligations undertaken pursuant to the plan. Failure to comply with this plan provision can result in a partner's forfeiting its partnership interest in Block Shim. This obligation is not abated by the bankruptcy and is not rendered moot by the other transactions involving the estate. The modified partnership agreement also appears to regulate future rights and obligations of the general partners. The D.C. Circuit in *AOV Industries* declined to dismiss as moot all parts of an appeal where a plan of reorganization continued to control the actions of the plan's disbursing agent. 792 F.2d at 1149. To the extent the plan provisions or partnership agreement modifications control future conduct—that is, conduct unnecessary to facilitate directly the post-confirmation transactions that enabled the plan to work—the court can grant effective relief without materially impacting the reorganization of Block Shim.

The language of the reorganization plan, however, is global in attempting to modify those provisions of the Block Shim partnership agreement that stand in the path of accomplishing the plan.[8] Yet only the portions of the original partnership agreement that need *not* have been revised to enable the transactions that fueled the reorganization plan remain available for granting relief. The present record is insufficient to permit the court confidently to discern which provisions of the partnership agreement remain subject to review. With respect to the partnership agreement alone, therefore, the court carries the motion to dismiss for further development in the merits briefing and for resolution at the time the remaining portions of the appeal are decided.

B

Appellees also seek dismissal of the appeal on the ground that appellants have engaged in inequitable conduct. This proposition derives from the Fifth Circuit's recognition in *Crystal Oil* that an appeal may be dismissed when an appellant has made no effort to obtain a stay and thus "has permitted 'such a comprehensive change of circumstances to occur as to render it inequitable' for the appellate court to reach the merits of the appeal." 854 F.2d at 82 (quoting *Roberts Farms*, 652 F.2d at 798).

Although the mootness and inequitable conduct grounds are treated as distinct, this court examines the record under both doctrines to discern if any part of the appeal remains for review. Inequitable conduct does not appear to have all-or-nothing ramifications; there can be a comprehensive change of circumstances that precludes the court from reaching portions of but not the entire merits. In the instant case the court's inequitable conduct finding is coterminous with its mootness analysis, neither adding to nor deleting from the

---

**8.** The plan provides:

As of the Effective Date, the Partnership Agreement shall be amended in the following respects:

1. All provisions of the Partnership Agreement relating to distributions shall be revised to correspond to the provisions of this Plan.

2. All provisions relating to required contributions and defaults with respect to same shall be revised to correspond to the provisions of this Plan.

3. To the extent necessary to conform the Partnership Agreement so that it shall be consistent with the provisions of this Plan.

universe of claims that remain for substantive review or of the debtor assets and organic documents that afford the possibility for granting effective judicial relief.

### C

 Appellees finally urge the court to dismiss the appeal in its entirety on public policy grounds. They argue that parties must be able to rely on court approved reorganizations in the absence of a stay. Where debtors, creditors, and third parties have changed their positions in light of a confirmation order, such entities "should not be put at risk" where an appellant has failed to take advantage of a procedural remedy available to it. If the court does not dismiss the appeal, appellees argue, potential purchasers will "be much less likely to purchase property from a debtor despite Court approval."

The court has no difficulty rejecting this contention. Appellees rely for authority for this principle upon the Eighth Circuit's decision in *In re Information Dialogues, Inc.*, 662 F.2d 475 (8th Cir.1981) (per curiam). There the circuit court dismissed as moot an appeal from a confirmed plan of reorganization. In so doing it observed that "the mootness doctrine promotes an important policy of the bankruptcy law— that court-approved reorganizations be able to go forward in reliance on such approval unless a stay has been obtained." *Id.* at 477 (citing *Roberts Farms*, 652 F.2d 793). The court predicated its dismissal on mootness grounds, which it found to promote an important policy; it did not announce an independent public policy rule of dismissal that reaches more broadly.

To dismiss the instant appeal on such an amorphous basis would arguably run counter to the principled doctrines that require substantial plan consummation, as in mootness, or a comprehensive change of circumstances, as in inequitable conduct, to warrant dismissing an appeal without reaching the merits. Inasmuch as these established rules adequately address the public policy concerns that appellees raise, the court declines to adopt a new basis for dismissing appeals.

### III

To summarize, the court dismisses this appeal to the extent it seeks appellate relief except with respect to the rights and obligations of the general partners in the three tracts (Nos. 1, 3, and 6) of the Sandfield Property that remain with Block Shim, the easement, and any provision of the plan of reorganization that regulates future conduct. Subject to further consideration in tandem with the merits resolution, the court declines to dismiss those bases for appellate review that seek to alter any plan-imposed modification of the partnership agreement not required to facilitate the transactions that the court has determined are no longer subject to appellate modification.

Pursuant to the court's October 30, 1989 order deferring appellees' obligation to file a brief pending resolution of their motion to dismiss, appellees' brief on the merits is now due 15 days from the date this opinion is filed. That brief shall also present any arguments with respect to the carried mootness argument. Appellants' reply brief shall be filed within 30 days of the date this opinion is filed.

DISMISSED IN PART.