CLEVELAND, BARRIOS, KINGSDORF & CASTEIX, Carl W. and Joey Walther Cleveland, Barbara T. and Michael J. Casteix, J. Byron Gathright, Thomas Cato, Campo Electronic Appliances and Computers, Inc., Anthony J. Campo, Agatha Mayronne and Gerald M. Haydel, and Marina Beau Chene, Appellants,

v.

David D. THIBAUT and Vera Wright Thibaut, Appellees.

Civ. A. No. 93–3201.
Bankruptcy No. 92–14281.

United States District Court,
E.D. Louisiana.

March 7, 1994.

Judy Cannella Schott, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, LA, for Joey Walther Cleveland, Cleveland, Barrios, Kingsdorf & Casteix, Carl W. Cleveland, Barbara T. Casteix, Michael J. Casteix, J. Byron Gathright, Thomas Cato, Campo Electronic Appliances and Computers, Inc., Anthony J. Campo, Agatha Mayronne Haydel, Gerald M. Haydel and Marina Beau Chene.

Jan Marie Hayden, Paul M. Nash, Bronfin & Heller, New Orleans, LA, for David D. Thibaut and Vera Wright Thibaut.

## OPINION

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on debtors/appellees', David D. Thibaut and Vera Wright Thibaut's motion to dismiss the "Cleveland Group's" [1] appeal of the Bankruptcy Court's August 12, 1993 Order [2] confirming debtors' First Amended Plan of Reorganization [3] (hereafter "the Plan"). The gravamen of appellees' motion is that the Plan has been substantially consummated and thus, appellants' the Cleveland Group's appeal should be dismissed as moot since appellants made no effort whatsoever to obtain a stay thereby permitting the comprehensive change of circumstances to occur which affects not only their rights, but also, the rights of third parties. Appellees further argue in light of the substantial consummation of the Plan that it would be inequitable at this point in time for this reviewing Court to reach the merits of the appeal. Appel-

lants the Cleveland Group filed formal opposition to the debtors/appellees' motion to dismiss and without disputing the facts argues that implementation of the Plan, thus far, is "inconsequential" and certain transactions including transfers to the liquidating trustee "are easily reversible."

The matter was set for oral hearing on March 2, 1993. However, the Court upon reviewing the record on appeal, the bankruptcy record, and the submissions of the parties, determined that oral argument would not aid it in the disposition of this matter and deemed the motion to dismiss submitted on the briefs and the documents of record. For the reasons stated herein, the Court is of the opinion that the Plan has been substantially consummated and that it would be inequitable at this time to address the merits on appeal, and thus GRANTS debtors/appellees' motion DISMISSING AS MOOT the appeal filed on behalf of creditors/appellants, Cleveland, Barrios, Kingsdorf & Casteix, Carl W. and Joey Walther Cleveland, Barbara T. and Michael J. Casteix, J. Byron Gathright, Thomas Cato, Campo Electronic Appliances and Computers, Inc., Anthony J. Campo, Agatha Mayronne and Gerald M. Haydel, and Marina Beau Chene (hereinafter the "Cleveland Group").

## I. PROCEDURAL AND FACTUAL BACKGROUND

On October 13, 1992 debtors/appellees herein, David D. Thibaut, M.D. and Vera Wright Thibaut,[4] filed for relief pursuant to Chapter 11 of the Bankruptcy Code. During the course of the proceedings in the Bankruptcy Court, the debtors filed a Plan of Reorganization and various amendments thereto. Any complaints objecting to the

---

1. The "Cleveland Group" includes the following creditors: Cleveland, Barrios, Kingsdorf and Casteix, Carl W. and Joey Walther Cleveland, Barbara T. and Michael J. Casteix, J. Byron Gathright, Thomas Cato, Campo Electronic Appliances and Computers, Inc., Anthony J. Campo, Agatha Mayronne, Gerald M. Haydel, and Marina Beau Chene.

2. Bkrtcy.Rec.Doc. No. 252.

3. Exhibit "A" to Bkrtcy.Rec.Doc. No. 252.

4. Several different Thibaut entities are referred to herein. Debtors are Dr. Thibaut and his wife, Vera. The "Thibaut Family," as defined by the Plan refers to "the children of the Debtors, their respective trusts, and any business which is owned in whole or in part by the children or any combination of these entities." The "Thibaut Trusts" refer to the Alma Louise Thibaut Trust, the Constance Elizabeth Thibaut Trust, the Sally Clarice Thibaut Trust, and the David D. Thibaut, Jr. Trust.

discharge of the Debtors were to be filed by January 23, 1993.[5]

Debtors/appellees' Disclosure Statement[6] filed on May 17, 1993, contains the following allegations. Although a licensed ophthalmologist, Dr. Thibaut spent most of his business career in the real estate field. During the 1960's though the mid–1980's, he acquired substantial real estate and other business holdings, and in 1962, the Thibaut Trusts were formed for the benefit of the Thibaut's four children. Alice Lemann Weed originally served as trustee of the Thibaut Trusts. However, she resigned in 1971 and Carl Cleveland served as successor trustee until 1991. Thereafter, the Thibaut children served as trustees for each other. The Thibaut Trusts were often partners in the business ventures of the Debtors.[7]

Debtors' Disclosure Statement further claims that they began losing money on a substantial number their real estate holdings as a result of the 1986 modifications to the Internal Revenue Code. At the same time, Debtors were unable to obtain financing to enable them to develop sources of revenue from additional properties. They thus experienced a negative cash flow of as much as $150,000 per month, and their estate was dramatically reduced. Dr. Thibaut's efforts to stem the cash shortfall by negotiating with creditors and closing down cash losing businesses proved unavailing.[8]

It was during the aforesaid time frame that Thibaut became embroiled in disputes with his former business partners and/or joint venturers, including Tony Campo, Carl Cleveland, and Dominick Scandurro.[9] Short-

ly before the filing of the bankruptcy petition, Scandurro obtained two judgments in two civil suits against Debtors in the amounts of $60,000 and $600,000 respectively. Debtors appealed these judgments.[10]

Throughout the period of their financial difficulties, Debtors "borrowed heavily from their children's trusts and other family owned entities," receiving loans from these sources in excess of $1.3 million.[11]

On August 11, 1993, a hearing was held on the confirmation of the debtors First Amended Plan of Reorganization with Immaterial Modifications (hereafter "the Plan"). That same date, appellants filed a Complaint Objecting to Discharge. The Cleveland Group, appellants herein, argue that the group is comprised of "some of the [debtors'] unsecured creditors", including Tony Campo and Carl Cleveland.[12] The aforesaid is only true in part. Appellants are Class 15 creditors (unsecured creditors with claims exceeding $1,000) pursuant to the Plan, *with the exception* of J. Byron Gathright and Gerald Haydel, who hold secured claims against debtors. Their Complaint alleged that debtors committed a fraudulent transfer in violation of 11 U.S.C. § 727 by trading shares of stock to their children in return for sole ownership of certain properties which they had co-owned with the children.

The alleged fraudulent transfer was described at length in the debtors' May 17, 1993 Disclosure Statement.[13] Additionally, at the August 11, 1993 confirmation hearing, debtors' son David Thibaut, Jr. testified regarding the circumstances of the transfer. Debtors' stated goal in entering into the

---

5. *See* Scandurro's Motion to Extend the Time for Filing Complaint Objecting to the Discharge from January 23, 1993 to a later date. (Bkrtcy. Rec.Doc. No. 56).

6. Bkrtcy.Rec.Doc. No. 166.

7. *Id.* at pp. 8–9.

8. *Id.* at p. 9.

9. *Id.*

10. *See Dominick Scandurro, Jr. v. Vera W. Thibaut and David D. Thibaut,* 22nd Judicial District Court for the Parish of St. Tammany, No. 90–

15268 (hereinafter "22nd JDC Suit") (court awarded summary judgment to Scandurro for $60,000 on promissory note); *Dominick Scandurro v. David Thibaut, et al.,* Civil District Court for the Parish of Orleans, No. E–92–782 (judgment in Scandurro's favor in excess of $600,-000); Disclosure Statement at pp. 14–15 (Bkrtcy. Rec.Doc. No. 166).

11. *Id.* at 11.

12. *See* Appellants' Opposition Memorandum, at p. 1.

13. Disclosure Statement, at pp. 10–14 (Bkrtcy. Rec.Doc. No. 166).

transaction was to reduce their indebtedness to Hibernia Bank.[14] Hibernia requested that Debtors obtain the children's interest to the properties prior to the transfer to reduce the legal ramifications involving Debtors' *dation* of the property to Hibernia. Debtors traded $800,000 worth of stock in closely held corporations to David Jr. and other Thibaut children in return for the children's ownership interests in certain properties. The interest of the parents, combined with that transferred to them by their children, was valued at between $2 million to $2.5 million. The parents then transferred the properties to the Hibernia Bank in return for cancellation of approximately $7 million in debt owed to Hibernia.[15] The Cleveland Group maintains that the value of the stock transferred to the children exceeded $800,000.

The bankruptcy judge held that the Cleveland Group's Complaint was untimely since it was filed after the said January 19, 1993 deadline for objecting to the discharge. The thrust of Cleveland Group's contentions on appeal is that the Bankruptcy court erred in refusing to consider their Complaint/Objections, their argument being that pursuant to Bankruptcy Rule 4004, they had until the day of the confirmation hearing, i.e., August 11, 1993, to file objections. It was the Bankruptcy Court's opinion that pursuant to the Bankruptcy Code, appellants were required to file objections by the date of the confirmation hearing, *except* when, as in the instant case, a different and earlier date had been specified by the bankruptcy judge. Judge Brahney further noted that Debtors had listed the Hibernia transaction in their Disclosure Statement, thus the creditors had knowledge of it when they accepted the Plan.[16] By Order entered August 12, 1993, the bankruptcy judge confirmed the Plan. On August 20, 1993, the Cleveland Group filed their Notice of Appeal. On September 2, 1993, after notice and a hearing, the bankruptcy court granted the "Motion for Order in Aid of Consummation of Confirmed Plan of Reorganization" in favor of debtors/appellees. On September 8, 1993, appellees filed their "Designation of Record"[17] on appeal. The bankruptcy record on appeal in the captioned matter was received by this Court on September 30, 1993.

The Plan (Bkrtcy.Rec.Doc. No. 252) in part provided for a payment of $150,000 by debtors to Scandurro in settlement of the Scandurro lawsuits.[18] Scandurro in return

---

**14.** Regarding the alleged "fraudulent" transfers, debtors' son David Thibaut, Jr. testified at the August 11, 1993 confirmation hearing as follows:

> Basically, what we worked out with Hibernia was that my father would give them the 20–acre tract of land [known as "Stone Lake," and located on the West Bank of the Mississippi River], a couple of hundred thousand dollars cash, his [David Thibaut Sr.'s] house, some lots in Marina Beau Chene and 1301 South Claiborne Building.... And they would release him from all of their claims against him. Hibernia wanted to have a whole piece of land though. They didn't want to have to deal—[t]hey wanted it to be a dation and they wanted it to be a whole piece of land so that they could have a dation without having any legal ramifications. So in order to achieve that—[h]e didn't own the whole piece of land and he didn't have any money to buy the piece of land from us [David Jr. and other of Debtors' children]. So what we did was is that we sold him our piece of land but he didn't have the money to pay for it so we bought from him his stocks in these different corporations and we just made them all equal to $800,000.

Transcript of the August 11, 1993 Confirmation Hearing, Testimony of David Thibaut, Jr., at pp. 24–26.

**15.** *Id.* at 26–27.

**16.** Transcript of the August 11, 1993 Confirmation Hearing, at p. 33.

**17.** Bkrtcy.Rec.Doc. No. 285. The bankruptcy court's docket sheet indicates that debtors the Cleveland Group's designation of the record on appeal was due September 20, 1993, however, the docket sheet reflects that no designation on behalf of the aforesaid appellants was received by the bankruptcy court as of that date.

**18.** The Plan, at p. 8 (Exhibit A to R. Doc. 252). Scandurro had filed a revocatory action to set aside the transfer of stock to the Thibaut Children, the same transaction which appellants' complaint challenged. In this suit, *Scandurro v. Thibaut*, C.A. No. 92–3699, filed in the United States District Court for the Eastern District of Louisiana, the Thibaut children as trustees for the Thibaut Trusts were also named as defendants. The Plan called for a variety of actions to be taken by Debtors, the Thibaut Family, and Scandurro, to obtain mutual releases of liability and dismiss all of the lawsuits. A complete description of the mutual releases and transfers involved in the Scandurro settlement is set forth in detail at Article 3 of the Plan.

agreed to release his claims against debtors, and remove encumbrances on real estate known as Lots "Y" and "Z".[19] This action would create "substantial equity" in these properties for debtors, who would then market the properties and use the proceeds to pay creditors, including appellants.[20] The Plan also required debtors to seek a change in zoning in connection with Lots Y and Z to further increase the value of this real estate.[21]

The Cleveland Group did not request or seek a stay of the implementation of the plan pending its appeal. In addition to their failure to seek a stay, appellants also delayed the filing of their appellate brief in this matter by four months. During this time, the following steps were taken in consummation of the Debtor's reorganization plan:

1. Scandurro's revocatory action was dismissed with prejudice and any and all lis pendens notices relating thereto were canceled. This revocatory action had sought to set aside the same transaction that was the subject of the Cleveland Group's Complaint herein;[22]

2. An equitable subordination complaint filed by Scandurro was dismissed with prejudice;

3. A complaint objecting to discharge which had been filed by Scandurro was dismissed with prejudice;

4. Appeal of the "22nd JDC" judgment was dismissed. Appeals of the "CDC" Judgments were withdrawn;[23]

5. A reconventional demand pending in the 22nd JDC was dismissed with prejudice. In this demand, Dr. Thibaut had sought damages for misrepresentation against Scandurro;

6. Debtors and the Thibaut Family obtained a full and complete release by Scandurro;

7. Real estate taxes relating to the property known as Square "E" were paid by Debtors;

8. On October 25, 1993, William J. Babin was appointed Liquidating Trustee of the bankruptcy estate;

9. Payment commenced to the Class 9 secured creditor, Byron Gathright (who also is an appellant herein);

10. All members of Class 14 (holders of unsecured claims of $1000 or less or claims which were reduced to $1,000) were paid 50% of their claims as called for in the Plan;

11. Connie Thibaut (debtors' daughter) transferred an interest in TLC (a real estate management company) stock to the liquidating trustee;

12. Debtors assigned accounts receivable to the liquidating trustee;

13. Debtors executed a promissory note in the amount of $15,000 in favor of the liquidating trustee. Pursuant to the Plan, debtors executed this note to "purchase" their non-exempt personal property from the trustee;

14. David Thibaut purchased from the estate interests in businesses and litigation by executing a promissory note in the amount of $3,500 in favor of the liquidating trustee;

15. Debtors granted special power of attorney to the liquidating trustee regarding the sale of various properties of the estate;

16. Debtors paid Scandurro $100,000. The Thibaut Family paid Scandurro $50,-000. Debtors used their exempt property, i.e., cash surrender value of certain life insurance policies, to fund their portion of the payment;

17. A property known as Square "E" was transferred by the Thibauts and/or Thibaut Family to Scandurro;

18. The automatic stay involving ITT Residential Capital Corp. was lifted permitting ITT to foreclose on its mortgaged property and said foreclosure has commenced;

19. *Id.*

20. *Id.* at pp. 7, 11.

21. *Id.* at p. 13.

22. Scandurro's revocatory action is described in footnote 18.

23. *See* Note 10, *supra,* and accompanying text.

19. A mortgage was executed in favor of the Liquidating Trustee regarding Lots Y and Z;

20. The Liquidating Trustee has commenced marketing some of the properties to be sold in accordance with the Plan;

21. A zoning change regarding Lots Y and Z was obtained by the Debtors to increase their value to the estate and the Debtors commenced their marketing activities in accordance with the terms of the plan.

Appellants do not dispute that the above-described transactions have occurred.

## II. CONTENTIONS OF THE PARTIES

As previously mentioned, the gravamen of appellee's motion is that the appeal is now moot on the bases that: (1) appellants made no effort to obtain a stay; and (2) appellants failure to seek a stay permitted the debtors to substantially implement their Plan and any relief granted would affect the rights of third parties and the success of the Plan.

Appellants characterize the transactions listed hereinabove as "inconsequential," and argue that the Plan has not been consummated. They claim that only the Scandurro transaction is irreversible, and that the Court may provide complete relief upon appeal because the Scandurro settlement may be left intact even if other aspects of the plan are reversed. This Court disagrees with appellants and finds based upon the undisputed facts that appellees' contention that the appeal has been rendered moot by virtue of substantial transactions undertaken in the absence of a stay is correct. The record amply demonstrates that significant assets of the debtors' estate and third parties have been conveyed to extinguish the claims against the estate to fund the payment of several classes of creditors. The record makes it equally clear that to undermine the validity of the aforesaid transactions would gut the debtors' ability to reorganize. The Court is of the firm opinion that it would be inequitable at this juncture to upset the Plan to the detriment of third parties, which *contra* appellants' contentions, can hardly be characterized as *de minimis*. In this case, where debtors, creditors, and third parties have changed their position in light of the confirmation order, such entities should not be put "at risk", since the appellants not only failed to seek a stay, but further, delayed the briefing schedule on appeal for roughly the period of four months, thus allowing substantial consummation of the Plan.

## III. LAW AND ANALYSIS

A bankruptcy appeal may be dismissed as moot where changed circumstances render it impossible for the appellate court to provide effective relief.[24] In determining whether such an appeal should be dismissed, the Court examines the following three factors:

> ... whether a stay has been obtained, whether the plan has been substantially consummated, and whether the relief requested would affect either the rights of parties not before the court or the success of the plan.[25]

Failure to seek a stay[26] of the bankruptcy court's action justifies dismissal of an appeal on mootness grounds where 1) "appel-

**24.** *See In re Crystal Oil Co.,* 854 F.2d 79, 81 (5th Cir.1988).

**25.** *In re Block Shim Dev. Co.–Irving,* 939 F.2d 289, 291 (5th Cir.1991).

**26.** Fed.R.Bankr.P. 8005 provides:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court....

lants failure to seek a stay has permitted such a comprehensive change of circumstances to occur as to render it inequitable for the appellate court to reach the merits of the appeal";[27] or 2) if "appellants' inaction [in failing to seek a stay has] led to the [substantial] consummation of the plan they now contest."[28]

■ The first and second factors set out in *Block Shim* are related since it is the failure to request a stay combined with a comprehensive change in circumstances or the substantial consummation of the Plan which mandates dismissal of the appeal. The issue therefore is whether appellants failure to seek a stay has led to either comprehensive changes or the substantial consummation of the Plan.

The record evidence amply demonstrates that a comprehensive change in circumstances has occurred as a result of appellants' inaction. As heretofore set out, pursuant to the Plan, properties have been transferred and monies have been paid by the debtors as well as third parties such as the Thibaut children. The Debtors have already cashed in their life insurance policies in order to settle their dispute with Scandurro. Several lawsuits pending in state court have been dismissed with prejudice.[29] These actions represent a very real change in circumstances and, contrary to appellants' contentions, said actions cannot be undone.[30]

The Bankruptcy Code defines substantial consummation as:

(a) transfer of all or substantially all of the property proposed by the plan to be transferred;

(b) assumption by the Debtor or by the successor to the Debtor under the plan or of the management of all or substantially all of the property dealt with by the plan;

(c) commencement of distribution under the plan.[31]

The first factor considers whether a "transfer of all or substantially all of the property proposed by the plan to be transferred" has occurred. The Court disagrees with appellants' contention that the transactions listed by Debtors are "inconsequential." Rather, a comparison of appellee's list of transactions with those required by the Plan, demonstrates that debtors have completed most if not all of the transactions described in Article 3 of the Plan, "General Provisions of the Plan and Means of Implementation."[32] Factor one is therefore satisfied.

The second requirement of § 1101(2) is "assumption by the Debtor or by the successor to the Debtor under the plan or of the management of all or substantially all of the property dealt with by the plan." It is undisputed that the liquidating trustee and/or debtors have begun marketing the properties

27. See e.g., In re Crystal Oil Co., 854 F.2d 79, 82 (5th Cir.1988); In re Club Assoc., 956 F.2d 1065, 1068 n. 10 (11th Cir.1992) ("when an appellant has made no effort to secure a stay or has not diligently pursued [its] available remedies to obtain one, a court is justified in dismissing the appeal solely on equity grounds if there has been a comprehensive change of circumstances").

28. Block Shim, 939 F.2d at 291.

29. See In re Texaco, Inc., 92 B.R. 38, 46 (S.D.N.Y.1988).

30. See Crystal Oil, 854 F.2d at 82 (dismissing appeal where commitments were made by the parties in reliance on the confirmed plan and the relief requested would destroy the plan and require the bankruptcy court to start anew); Central States Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 841 F.2d 92, 96 (4th Cir.1988) (dismissing bankruptcy appeal on mootness grounds after finding actions taken in

consummation of reorganization plan could not be undone).

31. 11 U.S.C. § 1101(2).

32. Appellants argue that apart from the Scandurro settlement, the only transactions which have occurred were transfers of certain properties to the liquidating trustee, and that these transactions may be undone. This contention is factually wrong. As noted in the Factual and Procedural Background section, debtors made payments to many secured and unsecured creditors in addition to the payments to the liquidating trustee. However, appellants' argument also ignores a more important point. Our review of the Plan indicates that the settlement with Scandurro and the zoning changes and marketing of Lots Y and Z constituted the major features of this Plan. By settling the Scandurro litigation and seeking zoning changes related to Lots Y and Z, Debtors accomplished most of the transactions called for in the Plan.

as called for in the Plan, and thus, this second requirement is satisfied.

The third factor considers whether distribution of assets has commenced. This factor also is satisfied since distribution pursuant to the Plan has begun. Tax liens have been satisfied, and Debtors have made payments to Gathright and Scandurro among others. Since Debtors have satisfied all three elements of 11 U.S.C. § 1101(2), the Plan has been "substantially consummated."

Pursuant to *Block Shim*, the final question to ask in determining whether a claim should be dismissed as moot is whether the relief requested by appellants would affect either the rights of parties not before the court or the success of the plan. In the instant case, both would be affected in the event that this Court were to permit the appeal to go forward. David Thibaut Jr.'s unrebutted testimony at the August 11, hearing was to the effect that Debtors' received cancellation of $7 million in debt in return for transfer of between $2 and 2.5 million in assets from Debtors. It is only logical to conclude, as Debtors' counsel suggested at the confirmation hearing,[33] that if this transfer were set aside, Debtors could once again be saddled with the original $7 million debt. The prospect of returning a multi-million dollar indebtedness to Debtors' balance sheet at this stage of the proceedings "would not only jeopardize, but [would] eviscerate, the plan."[34] Such also would affect the rights of third party, Hibernia Bank, which may have already disposed of these properties.

■ Appellants argument that the bankruptcy judge committed error by confirming the Plan while their objection was still pending, and that their appeal should be treated differently for this reason is without merit.[35] The controlling law of the Fifth Circuit requires that an appeal be dismissed as moot where, as here, appellants failure to request a stay has resulted in substantial consumma-

tion of the plan which they contest. *Block Shim*, 939 F.2d at 291.

## CONCLUSION

In sum, appellants' failure to seek a stay has both caused a comprehensive change of circumstances between the parties and has led to consummation of the Plan. As a matter of law and equity, Cleveland Group's appeal must therefore be dismissed as moot. Accordingly, and for the foregoing reasons,

IT IS ORDERED that the appellees', David D. Thibaut and Vera Wright Thibaut's, Motion to Dismiss the appellants' the Cleveland Group's appeal is hereby GRANTED and their appeal is hereby DISMISSED AS MOOT.

The Clerk of Court is directed to enter a judgment in accordance herewith.

---

33. Transcript of the August 11, 1993 Confirmation Hearing, at p. 33.

34. *Block Shim*, 939 F.2d at 291.

35. Appellants cite *Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 194 (9th Cir.1977) for

the proposition that an erroneously confirmed plan differs from other appeals, and argue, notwithstanding failure to seek a stay and the comprehensive changes that have occurred, on the authority of *Combined Metals*, this Court should consider the merits of their appeal.