In the Matter of BLOCK SHIM DEVEL-
OPMENT COMPANY–IRVING, Debtor.

RONIT, INC., and Michael A.
Block, Appellants,

v.

STEMSON CORPORATION, Appellee.

No. 90–1688.

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1991.

Anthony A. Petrocchi, Christopher M. Weil, Weil & Petrocchi, Dallas, Tex., for appellants.

John Christopher Luna, Mary L. O'Connor, Brenda T. Rhoades, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for appellee.

Before SMITH and DUHÉ, Circuit Judges, and SHAW,[1] District Judge.

1. District Court Chief Judge of the Western Dis-    trict of Louisiana, sitting by designation.

DUHÉ, Circuit Judge:

Appellants Ronit Inc. and Michael Block seek reversal of the district court's ruling upholding the Second Amended Reorganization Plan of the partnership of Block Shim Development Company–Irving ("Block Shim"). Appellants also seek review of the district court's dismissal of part of their appeal. We affirm.

## I.

Block Shim, a general partnership composed of appellant Ronit, appellee Stemson Corporation, and Ronville, Inc., involuntarily entered chapter 11 bankruptcy in 1989. Appellants Michael A. Block and Ronit, along with other creditors, timely filed proofs of claim with the bankruptcy court. Stemson, acting on behalf of Block Shim, submitted the Second Amended Plan of Reorganization now in question. After a hearing, the bankruptcy court accepted the plan over appellants' objections, and accordingly divided creditors' claims into five prioritized classes. Among them, class 2 pertained to the allowed secured claims of Block Shim's largest creditor, the Sandfield group; class 3 to the allowed unsecured claims of creditors, Saraband, Inc. and Mandolin Corporation; and class 4 to the allowed unsecured claims of all other creditors, namely Touche & Ross, Block Shim's accounting firm.

Essentially, the plan called for Block Shim to partially distribute its property and to use the proceeds to pay off and restructure its debts. The plan also redistributed partnership interests to reflect the actual capital contributions of the partners during restructuring. Ronit and Stemson's ownership interests would decrease while Ronville's interest would increase.

Pursuant to the plan, Block Shim transferred what was known as the Woodhall property and an easement, and a portion of the Sandfield property. Newco, a corporation owned by class 3 creditors, received this property in return for $1,500,000 and forgiveness of a $1,260,321 debt. Newco dissolved soon thereafter, and its owners sold a parcel of the transferred land to Laredo National Bank. Continuing to abide by the plan, Block Shim executed a promissory note, deed of trust, and guaranties by the partners for $800,000 in favor of the Sandfield group, and agreed to fulfill any further obligations to the group once it sold the remaining portions of the Sandfield property. In return, the Sandfield group released its interest in the transferred property and accepted a new note that would mature two years later than its earlier note.

Without seeking to stay the bankruptcy court's order, Ronit and Block appealed the decision to implement the plan. The district court dismissed part of that appeal as moot, finding that Block Shim already had conveyed significant assets of its estate to extinguish the principal claim against it. *In re Block Shim Dev. Co.–Irving*, 113 B.R. 256, 261 (N.D.Tex.1990). The district court affirmed the remaining issues of fairness on their merits. *In re Block Shim Dev. Co.–Irving*, 118 B.R. 450, 456 (N.D. Tex.1990).

Appellants' appeal to this Court is threefold. For the first time in these proceedings, appellants claim that the bankruptcy court lacked jurisdiction to enter an order that is reviewed under a clearly erroneous standard only. They further argue that the district court erred in dismissing part of their appeal as moot. Finally, appellants object to the district court's ruling on the merits of the plan. They advance several reasons for this contention including arguments that the plan was accepted over their objections and did not meet the appropriate "cram down" requirements, the plan was inequitable because it unfairly redistributed partnership interests, the plan was proposed in bad faith to squeeze out a minority partner, and the plan does not provide better relief than chapter 7 liquidation. We find none of these assertions persuasive.

## II.

*Jurisdiction:*

■ Appellants' contention that the bankruptcy court lacked jurisdiction to enter a judgment reviewable only by a clearly

erroneous standard is meritless. Appellants do not insist that we vacate or terminate these proceedings as would be proper if the bankruptcy court had been without authority to enter its order. Rather, they suggest that we apply a *de novo* standard of review to the bankruptcy court's decision. This is not a jurisdictional challenge, which we can examine at any time, but merely a challenge to the standard of review that appellants cannot raise at this late date.

Neither party challenged the bankruptcy court's authority to enter a final judgment at the plan's confirmation hearing. By proceeding, without jurisdictional objection, to final judgment before an Article I court, the parties waived any right they may have had to an Article III court. *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 848–49, 106 S.Ct. 3245, 3255–56, 92 L.Ed.2d 675 (1986).

*Mootness:*

■■■ This Court reviews factual findings of the district court using a clearly erroneous standard in light of the entire record. *Holloway v. HECI Exploration Co. Employees' Profit Sharing Plan,* 76 B.R. 563, 573 (N.D.Tex.1987), *aff'd,* 862 F.2d 513 (5th Cir.1988). In evaluating dismissal of a case as moot, we examine whether a stay has been obtained, whether the plan has been substantially consummated, and whether the relief requested would affect either the rights of parties not before the court or the success of the plan. *See Halliburton Serv. v. Crystal Oil Co.,* 854 F.2d 79, 81–82 (5th Cir.1988).

Appellants failed to seek a stay pending appeal of the bankruptcy court's judgment and offer no explanation why they did so. Though a stay generally is not a *per se* requirement of appeal, *id.* at 82, here, appellants' inaction led to the consummation of the plan they now contest.

The Bankruptcy Code defines substantial consummation as:

(a) transfer of all or substantially all of the property proposed by the plan to be transferred;

(b) assumption by the Debtor or by the successor to the Debtor under the plan or of the management of all or substantially all of the property dealt with by the plan.

(c) commencement of distribution under the plan.

11 U.S.C. § 1101(2). Block Shim and its creditors have completed every transfer contemplated by the plan, and the proceeds have been distributed. Reversal of the payments is impossible because Block Shim has disbursed to third parties the sum it received from Newco. Thus, both (A) and (C) of section 1101(2) are satisfied.

Reversing the dismissal, furthermore, would affect the rights of the Sandfield group and Laredo National Bank. Neither party is before this Court and neither was involved in this action at the district court level. That the plan has been consummated and that reversal would affect third parties' rights dictate an affirmative answer to our final inquiry: whether reversal would jeopardize the plan. Indeed, granting appellants the relief they seek would not only jeopardize, but eviscerate, the plan and thwart Block Shim's attempts to reorganize. Accordingly, we uphold the district court's ruling on mootness of the issues.

*Merits of the Plan*

■■■ We also agree with the district court that the plan meets the "cram down" conditions of section 1129(b)(1), including the requirement that a holder of "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10).

In this instance, the Code defines an insider as a general partner in, or of, the debtor, a partnership in which the debtor is a general partner, a person in control of the debtor, or relative of an insider. 11 U.S.C. § 101(31)(C). Impaired creditors are those whose legal, equitable, or contractual rights are altered by the plan. 11 U.S.C. § 1124(1). Because the plan extends the due date of the Sandfield group's note by two years and reduces by almost 20% the amount Touche & Ross may recover, and because neither party maintains control over Block Shim as described by the Code,

both are impaired non-insiders. Both approved the plan. The bankruptcy and district courts were correct in finding the conditions of section 1129(a)(10) satisfied.

■ Moreover, we see no error in the district court's ruling that the plan was fair and equitable in its reapportionment of the partnership interests in accordance with the revised capital contributions. Nor do we find evidence of bad faith on behalf of the plan's proponents. To be proposed in good faith, a plan must fairly achieve a result consistent with the Code. *In re Madison Hotel Associates*, 749 F.2d 410, 425 (7th Cir.1984). This requirement is viewed in the context of the circumstances surrounding the plan. *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir.1985). Following such guidelines, we uphold the district court's decision.

Appellants additionally argue that the plan was inappropriate because the claimants would have fared better if the assets had been liquidated under chapter 7. This is a difficult contention to quantify, and appellants advance on their behalf only speculation that they did not submit at the bankruptcy hearing. On all grounds, therefore, appellants have failed in their burden of proving error.

The judgments of the district court are AFFIRMED.