**In re JOHNSON SOUTHWEST, INC., Debtor.**

**JOHNSON SOUTHWEST, INC., Plaintiff–Appellee–Cross–Appellant,**

v.

**HARBERT ENERGY CORP., Defendant–Appellant–Cross–Appellee.**

**Civil Action No. 3:96–CV–0583–D. Bankruptcy No. 390–38843–RCM–11. Adv. No. 393–3704.**

United States District Court, N.D. Texas, Dallas Division.

March 4, 1997.

Richard G. Dafoe of Vial, Hamilton, Koch & Knox, L.L.P., Dallas, TX, for defendant–appellant–cross–appellee.

Barbara K. Hoffman–Hill, Dallas, TX, for plaintiff–appellee–cross–appellant.

FITZWATER, District Judge:

This appeal and cross-appeal from a bankruptcy court judgment awarding a post-confirmation debtor a recovery for a preferential transfer presents the questions whether the action was time-barred under the pre–1994 version of 11 U.S.C. § 546(a)(1), and whether the limitations period was equitably tolled. The court reverses the judgment of the bankruptcy court.

I

In December 1990 various creditors of plaintiff-appellee Johnson Southwest, Inc. ("JSW"), formerly known as Hunt Energy Corporation ("Hunt Energy"), commenced involuntary bankruptcy proceedings against it. JSW thereafter filed a voluntary chapter 11 petition on February 20, 1991. The bankruptcy court confirmed JSW's plan of reorganization—a liquidating plan—on November 29, 1991. No trustee was ever appointed in JSW's case.

JSW, as a post-confirmation debtor pursuant to its confirmed plan, filed an adversary proceeding against several defendants on November 29, 1993 (two years after plan confirmation) to recover preferential transfers. One of the defendants was Petro–Hunt Corporation ("Petro–Hunt"). JSW sought to recover a $45,941.89 interest payment that Hunt Energy had made to Petro–Hunt. In defending the action, Petro–Hunt contended that it had in turn paid an equivalent sum to

Wil–Mc Corporation ("Wil–Mc"), the predecessor-in-interest of defendant-appellant Harbert Energy Corporation ("Harbert"), and had acted merely as a conduit in paying Wil–Mc. In light of this defense, in September 1994 JSW added Harbert as a defendant, seeking to recover the $45,941.89 interest payment as a preference.

Wil-Mc owned a working interest in a well for which Hunt Energy was the operator. Due to title problems concerning Wil–Mc's interest, Hunt Energy (who was succeeded as operator in 1986 by Petro–Hunt) placed Wil–Mc's proceeds in a suspense fund during the years 1980 through 1990. When Petro–Hunt took over operation of the well in 1986, Hunt Energy transferred the suspended funds to Petro–Hunt. Petro–Hunt paid Wil–Mc the suspended funds on March 23, 1990, but did not pay interest. Following demands by Wil–Mc, on October 25, 1990 Petro–Hunt paid Wil–Mc the sum of $45,941.89 to satisfy the interest claim.

Harbert defended against JSW's preference action on the ground *inter alia* of limitations. The bankruptcy court initially agreed, granting summary judgment in favor of Harbert, but later vacated its judgment. Following a bench trial, the bankruptcy court held that the limitations provision of § 546(a)(2) of the Bankruptcy Code controlled, and that JSW's claim was not time-barred because its bankruptcy case had not been closed or dismissed as of the date it commenced the adversary proceeding. Mem. Op. at 7–8. The court also held that § 546(a)(1) of the Code did not apply to a post-confirmation liquidating debtor. *Id.* The bankruptcy court awarded JSW judgment in the sum of $40,941.89 (the sum $45,-941.89 less the amount of $5,000 paid by another party in settlement), concluding that Hunt Energy's payment to Wil–Mc, through Petro–Hunt as a conduit, was a preferential transfer.

Harbert appeals the judgment, contending that JSW's adversary proceeding was barred by limitations because JSW initiated the proceeding in excess of two years after the date it commenced its chapter 11 case—February 20, 1991.[1] JSW cross-appeals, arguing that if

---

1. Harbert also maintains that the bankruptcy court erred in holding that Petro–Hunt was a

this court concludes that the action was time-barred, it should also reverse the bankruptcy court's finding that the doctrine of equitable estoppel did not preclude Harbert from relying on its limitations defense.

## II

The court addresses first Harbert's contention that the bankruptcy court should have held that JSW's action was barred by limitations.

The courts have reached divergent interpretations of several aspects of the pre–1994 version of § 546(a)(1) of the Code, including whether the limitations period applies to debtors in possession.[2] The issues are difficult, and legitimate policy arguments exist on both sides. *See In re Maxway Corp.*, 27 F.3d 980, 984 (4th Cir.), *cert denied,* —— U.S. ——, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994). In *In re Emergency Networks, Inc.*, 188 B.R. 227 (N.D.Tex.1995) (Fitzwater, J.), this court agreed with the line of cases [3] that holds that debtors in possession are subject to the two-year limitations period of § 546(a)(1), and held that the limitations period for a debtor in possession commences on the petition date. *Id.* at 232–33. The court stated, in pertinent part:

> [P]roperly understood, the combined effect of §§ 546(a)(1) and 1107 is to create two distinct limitations periods: one that commences on the petition date and runs for two years or until the appointment of a trustee, and one that starts upon the appointment of a trustee in place of the debtor in possession and runs for two years thereafter.

*Id.* at 232 (citation and footnote omitted). "The court reject[ed] the reasoning of cases

that place no limits on the debtor in possession's ability to bring preference actions." *Id.* at 232 n. 8.

Subsequent to *Emergency Networks* the Tenth Circuit decided *Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816 (10th Cir.1995). Similar to the case below, *Starzynski* involved an adversary proceeding commenced by a liquidating agent acting pursuant to a liquidating plan of reorganization. *Id.* at 818. The agent commenced preference actions approximately two years after plan confirmation. *Id.* Based apparently on the Tenth Circuit's earlier decision in *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520 (10th Cir.1990), defendants moved to dismiss the action as barred by § 546(a)(1). They asserted that the two-year limitations period commenced on the date the order for relief was entered, and thus expired prior to the date the adversary proceedings were initiated. *Id.* Plaintiff contended that as a § 1123(b)(3) representative, he should be treated as the functional equivalent of a trustee, thus triggering a new two-year limitations period as of the date of his appointment. *Id.* The Tenth Circuit adhered to its earlier opinion in *Zilkha* that § 546(a)(1) applies to debtors in possession. *Id.* at 819–20. It rejected the assertion that the liquidating agent should be treated as a trustee for limitations purposes. *Id.* at 820–21. Therefore, because *Zilkha* started the limitations period upon commencement of the chapter 11 case, and in the absence of appointment of a trustee to start the two-year period anew, the estate representative was obligated to file preference and other avoidance claims within

---

mere conduit for the real transferee, Wil–Mc, and that Wil–Mc was therefore an initial transferee who cannot rely on the "for value" and "good faith" defenses of § 550(b) of the Code. Harbert contends that Hunt Energy did not owe a debt to Wil–Mc (instead, it owed the debt to Petro–Hunt), and thus Hunt Energy did not have an antecedent debt owing to Wil–Mc, as required by § 547(b)(2) of the Code. Because the court disposes of Harbert's appeal on the basis of limitations, it need not reach these arguments.

**2.** Bankruptcy courts in this district have held that the limitations period of § 546(a)(1) does not

apply to a debtor in possession under any circumstances. *See In re Emergency Networks. Inc.*, 188 B.R. 227, 229 n. 3 (N.D.Tex.1995) (Fitzwater, J.) (citing *In re Hunt*, 136 B.R. 437, 447–48 (Bankr.N.D.Tex.1991)).

**3.** *In re Century Brass Prods., Inc.*, 22 F.3d 37, 40 (2d Cir.1994); *In re Coastal Group, Inc.*, 13 F.3d 81, 86 (3d Cir.1994); *In re Softwaire Centre Int'l, Inc.*, 994 F.2d 682, 683 (9th Cir.1993); *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1524 (10th Cir.1990).

two years of commencement of the case. *Id.* at 821.[4]

In contrast with the *Zilkha–Starzynski* line of cases are *Maxway,* 27 F.3d at 984–85, and *Gleischman Sumner Co. v. King, Weiser, Edelman & Bazar,* 69 F.3d 799, 801–02 (7th Cir.1995). Neither the Fourth Circuit nor the Seventh Circuit would apply the two-year limitations period of the pre–1994 version of § 546(a)(1) to a debtor in possession. The Second Circuit recently declined to follow *Maxway* and *Gleischman Sumner,* adhering instead to its earlier decision in *In re Century Brass Prods., Inc.,* 22 F.3d 37 (2d Cir.1994), which is in accord with the other circuits that apply § 546(a)(1) to debtors in possession. *In re The Mediators, Inc.,* 105 F.3d 822, 828 (2d Cir.1997) (citing *In re Coastal Group, Inc.,* 13 F.3d 81, 86 (3d Cir. 1994); *In re Softwaire Centre Int'l Inc.,* 994 F.2d 682, 683 (9th Cir.1993); *Zilkha,* 920 F.2d at 1523–24).

■ In the absence of controlling Fifth Circuit authority, the court opts to follow the majority of circuits that applies § 546(a)(1) to debtors in possession, to adopt the approach taken in *Starzynski,* and to adhere to its opinion in *Emergency Networks.* The court therefore holds that JSW's action was time-barred because no trustee was appointed, and JSW did not commence the adversary proceeding within two years of February 20, 1991, the date the voluntary chapter 11 petition was filed.[5]

## III

JSW argues on cross-appeal that if § 546(a)(1) bars its action, the bankruptcy court erred in concluding that the doctrine of equitable tolling—in this case, the discovery rule—did not apply.

**4.** The *Zilkha* panel reached the same result as did this court in *Emergency Networks,* holding that if a trustee had been appointed, the trustee would have had two years from the date of appointment in which to file preference actions. *Id.* at 821; *see Emergency Networks,* 188 B.R. at 233.

**5.** Because JSW did not commence the adversary proceeding within two years of the petition date, the court need not reach Harbert's apparent con-

## A

The bankruptcy court rejected JSW's discovery rule argument. It found that although JSW's trial witness, Houston Hunt ("Houston Hunt"), testified that he did not learn of the payment to Wil–Mc until the summer of 1994, "[t]here was no testimony that the Petro[-Hunt] records and the November 10, 1990 billing (DX 10) to JSW or the Wil–Mc payment (PX 1) were concealed from JSW, the debtor-in-possession." Mem. Op. at 8. The court found that "[t]hese records were readily available to JSW, and the debtor-in-possession, at the date of bankruptcy, is charged with knowledge of same." *Id.*

JSW argues that there was no evidence that Petro–Hunt's records were readily available, or that it had any reason to review the Petro–Hunt records regarding the payment to Wil–Mc. It relies on testimony from Houston Hunt that Hunt Energy did not have free access to Petro–Hunt's records. JSW contends that although Petro–Hunt handled Hunt Energy's accounting and was the primary custodian of its records after Hunt Energy shut down, it does not follow, and cannot reasonably be inferred, that Petro–Hunt's business and accounting records were readily available so that JSW can be charged with knowledge of their contents. JSW maintains that although it knew the $45,941.89 payment to Petro–Hunt was for interest charges owed to Wil–Mc, it did not know and could not have discovered that the payment was not in reimbursement for sums Petro–Hunt had already paid to Wil–Mc, but was an advance payment. JSW contends the distinction is critical because it determines who is the proper party-defendant. JSW appears to concede that it received the invoice and accompanying interest calculation and information from Petro–Hunt, but it argues that until the summer of 1994, it had no reason to know or to investigate whether

tention that JSW's action against it was also time-barred because JSW did not add it as a party until 1994. *See* Appellant Br. at 8, 9. Were the court to hold that JSW's action against Harbert relates back to the date it filed the adversary proceeding in 1993, the action would still be precluded by § 546(a)(1) because it was commenced in excess of two years after JSW filed its chapter 11 petition.

Hunt Energy's payment to Petro–Hunt was simply passed on to Wil–Mc or whether Hunt Energy was reimbursing Petro–Hunt for interest it had previously paid to Wil–Mc. Once it had information that Petro–Hunt had passed the money on to Wil–Mc, it immediately obtained copies of documents and joined Harbert (Wil–Mc's successor) as a defendant.

### B

■■■ This court reviews the bankruptcy court's findings of fact under the clearly erroneous standard of review. "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re Placid Oil Co.,* 158 B.R. 404, 412 (N.D.Tex.1993) (Fitzwater, J.) (quoting *In re Block Shim Dev. Co.-Irving* 118 B.R. 450, 453 (N.D.Tex.1990) (Fitzwater, J.), *aff'd,* 939 F.2d 289 (5th Cir.1991)). "If the trier of fact's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it." *Id.* "[T]his court does not find facts. Neither is it free to view the evidence differently as a matter of choice." *Id.* "The bankruptcy judge's 'unique perspective to evaluate the witnesses and to consider the entire context of the evidence must be respected.' " *Id.* (quoting *Endrex Exploration Co. v. Pampell,* 97 B.R. 316, 323 (N.D.Tex.1989) (Fitzwater, J.)). A reviewing court may assume that the trial court made an implied finding consistent with its general holding so long as the implied finding is supported by the evidence. *Endrex Exploration,* 97 B.R. at 323.

■■■ The bankruptcy court found that JSW was aware of the relevant records and the interest payment. It impliedly found that once JSW knew of the pertinent documents, it could in the exercise of reasonable diligence have determined in 1990 whether the Hunt Energy payment to Petro–Hunt was in reimbursement for a payment that Petro–Hunt had made to Wil–Mc. These express and implied findings are not clearly erroneous. The bankruptcy court had ample basis in the record to find that once JSW knew that Hunt Energy had made a payment to Petro–Hunt concerning interest due Wil–Mc, had information regarding the identity of the well and the relevant time period, and was aware that the interest was due on revenues originally held in suspense, it could reasonably have investigated to ascertain whether Petro–Hunt was being reimbursed for paying Wil–Mc or was collecting money for its share of interest before paying Wil–Mc. Even if this court were to hold that the bankruptcy court clearly erred in finding that the Petro–Hunt records were readily available to JSW, the bankruptcy court did not otherwise clearly err in its implicit finding that the relevant records provided JSW with adequate information to prompt a reasonable liquidating debtor to investigate the details of the payment so that a preference action could be initiated against the proper party. As JSW concedes in its brief, "JSW does not dispute that it knew (or was charged with knowledge of) what the payment was for." Appellee Rep. Br. at 2. Petro–Hunt advised JSW of this in 1994 when defending the preference action that JSW had filed against it. It is not a difficult analytical progression to find that JSW could reasonably have discovered the payment relationship between Petro–Hunt and Wil–Mc well before Petro–Hunt raised it as a defense. This would seem to be the routine stuff of preference investigations, and does not in any event amount to clear error by the bankruptcy court.

The court therefore rejects JSW's cross-appeal, and upholds the bankruptcy court's findings concerning equitable tolling.

\* \* \*

Accordingly, the bankruptcy court's judgment in favor of JSW is

REVERSED.