**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 98-10046
Summary Calendar
_____

In The Matter Of:  BERRYMAN PRODUCTS, INC.
Debtor

_____

NATIONWIDE MUTUAL INSURANCE COMPANY;
MATT VAN HART

Appellants,

versus

BERRYMAN PRODUCTS, INC.;
BERRYMAN PRODUCTS OF DELAWARE, INC.

Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

This appeal arises from the Chapter 11 bankruptcy proceeding of Berryman Products, Inc. and Berryman Products of Delaware, Inc. ("Berryman" or "the Debtor").[1]  Appellants Nationwide Mutual

_____

[1]The briefs filed in this appeal reference a single Debtor, "Berryman Products, Inc.," but the appellees are listed as "Berryman Products, Inc. and Berryman Products of Delaware, Inc." We refer to a single Debtor throughout the opinion, but to the extent that both Berryman Products, Inc. and Berryman Products of Delaware, Inc. are affected, the term Debtor in the singular

Insurance Company and Matt Van Hart (collectively "Nationwide") appeal the district court's grant of the Debtor's motion to dismiss Nationwide's appeal of plan confirmation on the ground of mootness. Based on the facts before us, we conclude that the merits of the appeal are moot and therefore, dismiss the appeal.

I.

FACTS AND PROCEEDINGS

In March of 1993, the Debtor voluntarily filed for relief under Chapter 11 of the Bankruptcy Code (the "Code") as a result of being cast in judgment for $7.5 million in a products liability suit. That case arose from an accident that occurred in California on which Matt Van Hart ("Hart") sued Berryman and others alleging that he sustained injuries in a car that had been serviced with brake cleaner manufactured by Berryman (the "Hart Lawsuit"). Among others, Hart also sued the distributor of the brake cleaner, C.P. Hunt Company ("Hunt"). After a jury trial, the California court found Berryman and Hunt jointly and severally liable for $7.5 million, being 80% of the damages sustained by Hart.

At the time of the accident, Berryman was insured by Corporate Underwriters, Ltd., which failed to indemnify Berryman for losses it suffered by virtue of the Hart judgment. The specter of this judgment motivated Berryman to file voluntarily for reorganization under Chapter 11 of the Code. Hunt, the party jointly and

_____

references both entities.

2

severally liable with Berryman for the Hart judgment, was insured by Nationwide, which then settled with Hart. Nationwide agreed to pay Hart $6 million in exchange for a release from liability and the authority to pursue claims in Hart's name.

One month after Nationwide settled with Hart, Berryman filed suit against its own risk manager and Nationwide (the "Berryman Lawsuit"), alleging negligence, breach of express and implied contracts and warranties, breach of fiduciary duties, and negligent misrepresentation in connection with their conduct during the Hart Lawsuit. Additionally, Berryman appealed the verdict in the Hart Lawsuit, which was eventually reversed for trial errors and remanded in early 1995 for a new trial.[2] Both the Hart and Berryman Lawsuits are still pending.

At the onset of the Berryman bankruptcy proceeding, Nationwide, on behalf of Hunt, filed a proof of claim for $6 million, the amount paid on the personal injury/products liability claim. On the recommendation of Berryman, the court estimated Nationwide's claim to be $6 million for purposes of voting and evaluating the feasibility of a plan; resolution of the Hart and Berryman Lawsuits was not predicted to occur until three to five years after plan confirmation. Hart too filed a claim for the remaining $1.5 million of the net $7.5 million personal injury

---

[2]Unlike Berryman, Nationwide did not appeal the verdict in the Hart Lawsuit.

judgment.[3]

The Debtor's Reorganization Plan (the "Plan") was structured to assure repayment of 100% of the present value of the claims through issuance of interest-bearing, fifteen year notes for the $6 million and $1.5 million, respectively. As state court litigation was ongoing, the term of the notes was set to commence on entry of final orders resolving all contested matters in the Hart and Berryman Lawsuits. In other words, in an effort to avoid undue delay in the administration of the Plan, Nationwide's claims were characterized as contingent and unliquidated.[4] Nationwide objected to the Plan on various grounds and was the only class of creditors to vote against it. The bankruptcy court held a two-day hearing to evaluate the Plan and contemplate Nationwide's objections, ultimately confirming the Plan in July, 1994.

The next month, Nationwide sought a stay from the bankruptcy court to prevent the Plan's execution and appealed the bankruptcy court's order of confirmation to the district court. The bankruptcy court denied the stay on the merits, and Nationwide appealed its request for a stay to the district court. Citing the

---

[3]During the pendency of the bankruptcy proceeding and the Hart Lawsuit appeal, Matt Van Hart died and all claims in his name have subsequently inured to his estate.

[4]See 11 U.S.C. § 502(c) (1994); BANKR. R. 3018(a) (providing for the estimation of claims for purposes of voting to accept or reject a plan).

4

failure to follow Bankruptcy Rule 8005,[5] the district court likewise denied the stay. Nationwide neither filed an amended request to correct the deficiencies noted by the district court nor appealed the denial of the stay to this court. In the absence of a stay to prevent execution of the Plan, the Debtor commenced implementation by paying its creditors (with the exception of the Nationwide claims, which were contingent).

As noted, Nationwide had also appealed the bankruptcy court's order confirming the Plan to the district court. Arguing that this appeal was moot, the Debtor filed a motion to dismiss, which was followed by an exchange of response and reply memos. More than a year after the appeal of plan confirmation was filed —— in January, 1996 —— Nationwide requested a hearing on the matter, which the district court denied. Although it eventually set a hearing in December, 1997, the district court ultimately canceled the hearing and granted the Debtor's motion, finding the appeal moot and inequitable. The district court focused on (1) Nationwide's failure to obtain or diligently seek a stay of the Plan, (2) the Plan's resulting implementation, and (3) the inevitable prejudice that the Debtor would incur from a reversal. Nationwide timely

---

[5]Bankruptcy Rule 8005 provides that a motion for stay pending appeal made to the district court must show why the relief was not obtained from the bankruptcy judge. BANKR. R. 8005. The district court found that "appellant in no way indicates the reasons for the bankruptcy judge's denial of its request for a stay." The district court further noted that notwithstanding the procedural deficiency, appellants failed to make the necessary showing that they were entitled to a stay pending appeal.

filed this appeal.

ANALYSIS

A.    Standard of Review

In the bankruptcy appellate process, we perform the same function as did the district court:    Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed de novo.[6]

B.    Applicable Law

Nationwide contests the district court's dismissal of its appeal challenging confirmation of the Plan.  Nationwide urges us to reverse the order of dismissal and reach the merits of the appeal, contending that the mootness analysis applied by the district court was flawed.  Nationwide focuses on the district court's finding that reversal of the Plan would disrupt trade relationships and jeopardize the Plan's economic core.  Instead, Nationwide asserts, the Debtor, in its exclusive discretion, could

---

[6]Matter of Crowell, 138 F.3d 1031, 1033 (5th Cir. 1998); Matter of U.S. Abatement Corp., 79 F.3d 393, 397 (5th Cir. 1996); In re Block Shim Dev. Co.-Irving, 939 F.2d 289, 291 (5th Cir. 1991).  Nationwide urges this court to adopt a plenary standard of review because the district court on appeal did not have access to the entire bankruptcy court record.  In our review, we are not limited to the record examined by the district court, but refuse to adopt a plenary standard of review as it applies to issues of fact. As we have repeatedly held, findings of fact are reviewed under the clearly erroneous standard.  See Block Shim, 939 F.2d at 291 (in evaluating dismissal of a case as moot, the court "reviews factual findings of the district court using a clearly erroneous standard in light of the entire record.").

choose to forego repayment from its creditors, thereby maintaining the status of the Plan and precluding a finding of mootness.

The standard for mootness in the bankruptcy context differs from a constitutional mootness analysis. Article III of the United States Constitution requires an inquiry into whether a live case or controversy exists; in contrast, reviewing courts considering bankruptcy appeals such as the one now before us seek to determine whether implementation of the reorganization plan has progressed to a point at which fundamental changes in the plan would jeopardize its success.[7] Stated differently, we may decline to consider the merits of confirmation when a plan has been so substantially consummated that effective judicial relief is no longer available —— even though the parties may have a viable dispute on appeal.[8] Historically, when evaluating dismissal of challenges to reorganization plans in a bankruptcy case as moot, we have looked to see whether (1) a stay has been obtained, (2) the plan has been substantially consummated, and (3) the relief requested would affect either the rights of parties not before the court or the success of the plan.[9] Nationwide argues that in this case each of

---

[7]In re Manges, 29 F.3d 1034, 1038-39 (5th Cir. 1994), cert. denied, 513 U.S. 1152 (1995).

[8]Id. at 1039; see also In re Andreuccetti, 975 F.2d 413, 418 (7th Cir. 1992); In re Crystal Oil Co., 854 F.2d 79, 82 (5th Cir. 1988); In re Roberts Farms, Inc., 652 F.2d 793, 798 (9th Cir. 1981).

[9]Manges, 29 F.3d at 1039; Block Shim, 939 F.2d at 291.

7

the elements is lacking in some respect; accordingly, we now evaluate each in turn.

1.    Failure to obtain a stay

The first question in a mootness inquiry is whether the appellants secured a stay to prevent execution of the Plan.   As correctly noted by the Debtor, the requirement of a stay encapsulates the fundamental bankruptcy policy of reliance on the finality of confirmation orders by the bankruptcy court.[10] Nationwide asserts that because it diligently pursued a stay, its failure to obtain the stay does not require dismissal of the proceeding as moot.[11]  We rejected this argument in In re Manges.[12] In response to a similar argument, we cited with approval a Seventh Circuit opinion that stated, "[a] stay not sought, and a stay

---

[10]See In re Public Serv. Co., 963 F.2d 469, 471-72 (1st Cir.) ("the equitable component [to the mootness doctrine] centers on the important public policy favoring orderly reorganization and settlement of debtor estates"), cert. denied, 506 U.S. 908 (1992); In re Information Dialogues, Inc., 662 F.2d 475, 476-77 (8th Cir. 1981) ("[T]he mootness doctrine promotes an important policy of bankruptcy law —— that court-appointed reorganizations be able to go forward in reliance on such approval unless a stay has been obtained.").

[11]Nationwide cites In re Federated Dept. Stores, Inc., 44 F.3d 1310 (6th Cir. 1995) and Matter of 203 LaSalle St. Partnership, 126 F.3d 955 (7th Cir. 1997), cert. granted, 118 S.Ct. 1674 (1998), to support its proposition.  In our view, however, neither of these cases provide guidance.  Federated involved the appointment of a financial advisor, which the court termed a "collateral consequence" to reorganization, 44 F.3d at 1315-16, and 203 LaSalle St. involved the reversal of a bankruptcy plan because innocent third parties were unharmed.  126 F.3d at 961.

[12]29 F.3d at 1039-40.

8

sought and denied, lead equally to the implementation of the plan of reorganization."[13]  In Manges we recognized that a reviewing court's decision not to grant a stay is often dispositive of a mootness challenge on appeal, but that provisions of the Bankruptcy Code "preordain" such a consequence.[14]

In this case, Nationwide unsuccessfully petitioned both the bankruptcy and district courts to obtain a stay, yet failed to appeal the stay to this court or to amend its motion in the district court to comply with procedural inadequacies.  In the absence of a stay, the Plan became effective and was implemented over the course of four years.  Consistent with our Manges opinion, we conclude that even though Nationwide sought a stay ⎯ pursued with a marked lack of diligence, we might add ⎯ the stay was denied and the Plan was largely implemented.  Consideration of this factor thus militates in favor of dismissal for mootness.

2.    Substantial consummation of the Plan

The second question in the mootness inquiry is whether the Plan has been substantially consummated, which the Code defines as: (a) transfer of substantially all property the plan proposes to transfer; (b) the debtor's assumption of the business or management of substantially all property dealt with by the plan; and (c)

---

[13]Manges, 29 F.3d at 1040, quoting In re UNR Indus., Inc., 20 F.3d 766, 769-70 (7th Cir.), cert. denied, 513 U.S. 999 (1994).

[14]Manges, 29 F.3d at 1040 (citing to sections of the Bankruptcy Code and  Bankruptcy Rules that prohibit reversal or modification of unstayed bankruptcy orders).

commencement of distribution under the plan.[15] At this time —— more than four years after the effective date of the Plan —— the Debtor has repaid $1.37 million in trade debt and has retired $2.15 million in secured debt owed to an insider of the company; the allowed claims has been effectively repaid in full.[16]

Nationwide argues that because distributions have never commenced on its $6 million claim, the plan cannot have been substantially consummated. Nationwide attempts to characterize its claim as non-contingent and liquidated because the bankruptcy court, in an estimation proceeding, recognized the indemnity obligation owed to Nationwide by the Debtor. Nationwide supports its argument by attempting to distinguish its right to indemnity from the personal injury judgment in the Hart Lawsuit, insisting that its indemnity claim is not contingent on the outcome of the Hart Lawsuit appeal. We disagree. The judgment in the Hart Lawsuit was partially satisfied by Nationwide, which sought indemnity for its payment. This payment, however, is the basis of the Debtor's claim against Nationwide on grounds of breach of warranty and fiduciary duties (the Berryman Lawsuit).

---

[15]11 U.S.C. § 1101(2) (1994).

[16]The district concluded that substantial consummation had occurred based on 150 distributions to trade creditors totaling $337,000. Subsequent to the briefings in the district court, the Debtor made additional payments under the Plan. We evaluate all payments made by the Debtor at the time this appeal, which includes these additional payments. See Manges, 29 F.3d at 1041 ("[T]his court may review evidence as to subsequent events not before the courts below which bears upon the issue of mootness.")

10

Consequently, the indemnity obligation owed by the Debtor to Nationwide is directly contingent on the outcome of both the Hart and Berryman Lawsuits.

Furthermore, the bankruptcy court estimated the value of Nationwide's claim at $6 million solely for voting and feasibility purposes —— not for allowance. Nationwide's claim will not become an "allowed" claim until the conclusion of all the state court litigation. At the present time, the Debtor has fulfilled all obligations allowed under the Plan, thereby resulting in its substantial consummation.[17] We find Nationwide's arguments unavailing and conclude that the second factor in this analysis weighs in favor of dismissal as moot.

3. <u>Effect on parties not before the court</u>

The final question in the mootness inquiry is whether the requested relief would affect the rights of parties not before the court or the success of the Plan. Nationwide assures us that it does not seek piecemeal revision or amendment of the Plan, but requests reversal of Plan confirmation in its entirety. In seeking reversal of confirmation, Nationwide contends that the Debtor need not restore distributions made under the Plan, citing section 549 of the Code to support this proposition. Nationwide's argument, however, has no applicability in this context. Section 549

---

[17]<u>See</u> <u>Block Shim</u>, 939 F.2d at 291 (finding substantial consummation under the Code because "Block Shim and its creditors have completed every transfer contemplated by the plan.").

11

provides, in pertinent part: "[T]he trustee may avoid a transfer of property of the estate . . . that is not authorized by this title or by the court."[18] Under this section, a two year statute of limitations is placed on recovery of such post-petition transfers unauthorized by the Code.[19] In contrast to the situation addressed in section 549, the Plan expressly authorized the payments made by the Debtor in accordance with the Bankruptcy Code. Section 549 does not address Nationwide's argument, and Nationwide does not cite any authority for the proposition that, in reversing the Plan, the Debtor can forgo repayment from creditors. To the contrary, we remain satisfied that reversal of the Plan means exactly that —— placing the parties in the status quo pre-confirmation.[20]

Unraveling the Plan at this time clearly would affect the position of trade creditors who granted concessions to the Debtor under the reorganization. In fact, trade creditors reinstated favorable pre-bankruptcy terms to the Debtor in exchange for full satisfaction of their claims. The restored terms fueled the success of the reorganization and allowed the Debtor to pass

---

[18]11 U.S.C. § 549(a) (1994).

[19]Id. (emphasis added). The Debtor in this case would be outside of the two year limit.

[20]See e.g. Manges, 29 F.3d at 1043 (doubting that the status quo as it existed before the confirmation order could be attained if the court unraveled the Plan); Miami Ctr. Ltd. Partnership v. Bank of New York, 838 F.2d 1547, 1557 (11th Cir. 1988) (holding that it would be legally and practically impossible to restore the status quo before confirmation), cert. denied, 488 U.S. 823 (1989).

savings on to its customers.  Reversal of these payments would frustrate creditor relations and the emergence of the Debtor as a viable going concern in the economy.[21]  We are satisfied that, like the first two factors, this third one weighs against interfering with the Plan after the passage of some four years.

### III.

### CONCLUSION

The district court properly granted the Debtor's motion to dismiss because Nationwide's appeal met the test for mootness. Nationwide did not secure or diligently pursue a stay to prevent execution of the Plan, as a result of which the Plan was substantially consummated.  The Debtor has extinguished 100% of the obligations provided for in the Plan, with the exception of the Nationwide claims, which presumably will be allowed when all state court litigation is finally resolved.  Returning the Debtor to the pre-confirmation status quo now would undermine the success of the Plan and jeopardize critical trade relations of the Debtor.  For the forgoing reasons, we decline to reach the merits of the Plan, and we dismiss the appeal of confirmation order as moot.

APPEAL DISMISSED.

---

[21]See Crystal Oil, 854 F.2d at 81 ("loss of this plan would disrupt a very successful organization").