**In re Tracey BARNES, Debtor.**

**No. 03–38157 HDH–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 3, 2004.

---

Eric A. Liepins, Eric A. Liepins, P.C., Dallas, TX, for Debtor.

Bruce Campbell, Joe Campbell, San Antonio, TX, Pro Se Objectors, The Campbell Brothers.

## ORDER CONFIRMING PLAN OF REORGANIZATION

HARLIN D. HALE, Bankruptcy Judge.

This contested confirmation case presents several issues: classification of classes under the Debtor's plan of reorganization (the "Plan"), valuation of property transferred under the Plan, the "good faith" of the Debtor in filing his Plan, and the feasibility of the Plan. After considering the record made at the confirmation hearing, the court concludes that the Debtor has met his burden of proof, and his Plan will be confirmed.

*Events Leading Up to Bankruptcy*

Tracey Barnes (the "Debtor") is in the music business. Specifically, the Debtor owns 88% of Asgaard Interactive Multimedia, LLC ("Asgaard"), a company that owns and operates an on-line magazine and an on-line radio station known as Hard Radio which was launched on December 31, 1995, as the first radio station operated exclusively on the internet. Six other stockholders in the company own the remaining 12% of the shares of stock.

Bruce and Joe Campbell (the "Campbell Brothers") were contributors to the Hard Radio web site. They and the Debtor have been engaged in hotly contested litigation before the United States District Court and the Magistrate Judge presiding over the litigation for several years. In that litigation, the Campbell Brothers sued the Debtor for breach of an alleged agreement by the Debtor to transfer to the Campbell Brothers a 12% interest in the company. In May, 2003, after a jury trial, the district court entered a judgment (the "Judgment") against the Debtor for breach of contract and awarded the Campbell Brothers damages in the amount of $675,000, representing 12% of the value placed by the jury on Hard Radio as of the time that the transfer of the interest in Asgaard to the Campbell Brothers was supposed to have occurred in 2000. On August 11, 2003, after the Judgment was entered, the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code.

Since the filing of the bankruptcy case, the Debtor has moved expeditiously through the plan confirmation process. A disclosure statement was filed, noticed, and approved by this Court on October 31, 2003.[1] The Debtor's Plan, which was filed

---

1. The order approving the disclosure statement was entered on the docket on November 6, 2003.

on September 9, 2003, was sent out to creditors and parties in interest, and votes were solicited by the Debtor. All creditors other than the Campbell Brothers voted in favor of the plan. In addition the Campbell Brothers were the only creditors to file an objection to the proposed Plan.

### Campbell Brothers' Objections to the Plan

Under the Plan, the Debtor proposes to transfer 6% of his interest in Asgaard, which owns Hard Radio, to each of the Campbell Brothers in complete satisfaction of their claims. The Plan places the claims of the Campbell Brothers in Class 4, along with one other claimant. Class 4 is listed as a non-impaired class. The Campbell Brothers object to this treatment under the Plan. They argue that, because they and the other claimant in Class 4 are receiving property, rather than cash, in payment of their claims, Class 4 is an impaired class. They also argue that the value of the stock to be transferred under the Plan is not $675,000. Additionally, the Campbell Brothers assert that the Debtor should have considered other options, including selling shares in Asgaard and paying the Campbell Brothers in full with the proceeds, and that the failure of the Debtor to do so shows that the Debtor did not file the Plan in good faith. Lastly, the Campbell Brothers objected to the Plan on the basis that it is not feasible.

### Impairment of Class 4 Under the Plan

As noted above, the class of claims of which the Campbell Brothers' claims are a part was classified in the Plan as a non-impaired class. The issue is relevant in this case because, under § 1126(f) of the Bankruptcy Code, if Class 4 is not impaired, it and the Campbell Brothers would be "conclusively presumed to have accepted the plan," 11 U.S.C. § 1126(f), which would mean that all impaired classes would have accepted the plan pursuant to § 1129(a)(8) of the Code. On the other hand, if Class 4 is impaired, then Class 4 would be treated as a rejecting class because the Campbell Brothers, whose claims represent more than two-thirds in amount and more than one-half in number of Class 4 claims, have rejected the Plan. See, 11 U.S.C. § 1126(c) ("A class of claims has accepted a plan if such plan has been accepted by creditors ... that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors ... that have accepted or rejected such plan."). At the hearing on confirmation, the Debtor conceded that Class 4 was a non-accepting impaired class and that he would have to proceed under the "cram down" provisions of § 1129(b).[2]

### Value for "Cram Down" Purposes

The "cram down" provisions allow a debtor to confirm a plan over the objections of a non-accepting impaired class if, with respect to a class of unsecured claims,

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a

2. Without deciding the issue, the concession by the Debtor that the Campbell Brothers' claims are impaired under the Plan appears proper to this Court. Under the Code a class of claims is impaired under a plan "unless, with respect to each claim ... of such class, the plan—(1) leaves unaltered the legal, equitable, and contractual rights to which such claim ... entitles the holder of such claim ...." 11 U.S.C. § 1124. The Debtor's Plan proposes to give the Campbell Brothers stock in full satisfaction of their liquidated claim, which clearly alters legal rights they would have been entitled to outside of the bankruptcy context. Such an alteration appears to be an impairment under the provisions of § 1124.

value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C. § 1129(b)(2)(B). The Debtor and the Campbell Brothers disagree about whether the interest in the Asgaard stock that is proposed to be transferred to the Campbell Brothers under the Plan has a value of at least $675,000 so as to satisfy the requirements of § 1129(b)(2)(B)(i). Although the terms of the Plan indicate that the interests to be transferred to the Campbell Brothers total 12% of *the Debtor's* interest in Asgaard (which is 88% of the total shares of stock), the Debtor's arguments at the confirmation hearing and his testimony in support of the value of the shares to be transferred to the Campbell Brothers under the Plan indicated that the interest proposed to be transferred in satisfaction of the Campbell Brothers' claims is 12% of the total outstanding shares of Asgaard, not 12% of the Debtor's interest in Asgaard.

The Debtor submits that the value of 12% of the Asgaard stock would be worth at least $675,000 as of the effective date of the Plan because (1) the amount of the judgment entered in the district court litigation, which forms the basis of the Campbell Brothers' claims, was arrived at by a jury finding that 12% of Hard Radio was worth $675,000 in 2000, and (2) the value of Hard Radio has only increased since that time. The uncontroverted testimony of the Debtor was that the value of on-line radio stations on the open market is based on the number of customer "hits" on the web site on a monthly basis and that Hard Radio has substantially more hits per month now than it did in 2000. The Debt-

or further testified that the fact that the web site now has a significantly greater number of pages for web site users to view compared with the number of pages available in 2000 is a further indication of an increase in value of the Hard Radio from 2000 until today. The Campbell Brothers did not put on any evidence regarding the value of the Asgaard stock nor did the Campbell Brothers submit any evidence to controvert the testimony of the Debtor regarding the value of the stock. The Court finds that the value of a 12% interest in Asgaard is at least equal to the allowed amount of the Campbell Brothers' claims as required by § 1129(b)(2)(B)(i). Therefore, these requirements for "cram down" have been met by the Debtor.

### Good Faith

The Campbell Brothers argue that the Debtor's Plan cannot be confirmed because the Debtor did not file the Plan in good faith. Section 1129 of the Bankruptcy Code requires that, to be confirmable, a plan must, among other things, have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3); *see also Financial Sec. Assurance Inc. v. T–H New Orleans Ltd. P'ship (In re T–H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir.1997); *see generally* Collier on Bankruptcy ¶ 1129.03[3] (Lawrence P. King, ed., 15th ed. rev.2003). If no objection is filed, the court may determine that the plan has been proposed in good faith without receiving evidence on that issue. *See* Fed. R. Bankr.P. 3020(b)(2). However, if good faith is contested, then the Debtor has the burden of proof on that issue, and the standard of proof is the preponderance of the evidence. *See, In re T–H New Orleans Ltd. P'ship*, 116 F.3d at 802.

Good faith in the Chapter 11 plan process is not defined by the Code. Gener-

ally speaking, to be proposed in good faith, a plan must "fairly achieve a result consistent with the [Bankruptcy] Code." *In re Block Shim Dev. Co.—Irving*, 939 F.2d 289, 292 (5th Cir.1991)(citing *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir.1984)). Keeping in mind the "fresh start" policy of the Bankruptcy Code, the court must look to the totality of the circumstances surrounding the establishment of the plan to determine whether a plan is filed in good faith. *See In re T–H New Orleans Ltd. P'ship*, 116 F.3d at 802 (citing *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir.1985)). A plan need not be one that the creditors would themselves design to satisfy the requirement of good faith. *Id.* (citing *In re Briscoe Enter., Ltd., II*, 994 F.2d 1160, 1167 (5th Cir. 1993)).

In the present case the Debtor has divided the class of unsecured creditors into two classes under the plan. Class 3 consists of those unsecured creditors holding claims in an amount less than $1,500.00. Creditors in Class 3 will be paid, out of the Debtor's household income, 50% of their allowed claim over a period of 12 months. See ¶ 5.4 of the Plan. Creditors holding unsecured claims of more than $1,500 (which includes the Campbell Brothers and one other claimant) are to receive stock in Asgaard from the Debtor of a value equal to the amount of their Allowed Claim. See ¶ 5.5 of the Plan. Again, although the proposed distribution to the Campbell Brothers is 6% of *the Debtor's interest* in Asgaard, the Court considers this provision of the Plan to have been modified, by the position taken by the Debtor at the confirmation hearing, to provide for a transfer of 12% of the total outstanding shares of stock in Asgaard to the Campbell Brothers. The Campbell Brothers argue that the Debtor did not propose his Plan in good faith because he should have proposed a Plan that would have marketed

and sold some of the Debtor's shares in Asgaard and used the proceeds from the sale to pay the Campbell Brothers' claims in cash. They also argue that forcing them to be "business partners" (through a minority ownership of stock) in Asgaard with the Debtor will lead to a liquidation of the company and therefore constitutes a lack of good faith on behalf of the Debtor in proposing the Plan.

■ Although the Campbell Brothers did not specifically raise the issue of the separate classification and disparate treatment of their claims from the claims of unsecured creditors holding claims in amounts less than $1,500, the Court notes that this separate classification and treatment is allowed under the Code if done for administrative convenience and would not, therefore, be a basis for a finding that the Debtor has proposed his Plan in bad faith. *See* 11 U.S.C. § 1122(b) (which allows a plan proponent to "designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience."); *see also* Collier on Bankruptcy ¶ 1129.04[3][c][i] ("Section 1122 permits separate classification of small claims for administrative convenience and section 1123 permits separate treatment of such claims.").

■ Turning to the Campbell Brothers' specific arguments regarding the Debtor's lack of good faith in filing his Plan, the Court notes again that the fact that a plan proposed by a debtor is not the one that the creditors would have proposed does not make the plan one that has not been filed in good faith. *In re T–H New Orleans Ltd. P'ship*, 116 F.3d at 802 (citing *In re Briscoe Enter., Ltd., II*, 994 F.2d 1160, 1167 (5th Cir.1993)). Instead, this Court must look to all of the circumstances

surrounding the filing of the Plan to determine if the Plan was proposed in good faith.

Here, the Debtor testified that he did not have funds nor did he anticipate having funds in the near future that would be sufficient to pay the claims of the Campbell Brothers of any substantial part of those claims. Instead, the only asset of value that he has to satisfy the claims of the Campbell Brothers is the stock in Asgaard. The Debtor testified that his goal is to continue to increase advertising time on Hard Radio, which would increase the value of Asgaard. He will eventually sell Asgaard, at which time the holders of the stock in Asgaard, including the Campbell Brothers, will be paid for their stock. The Debtor is motivated to maximize the value of the holding company because he will continue to own a substantial interest in the holding company. Debtor has great incentive and risk in the future of the holding company. Although few creditors voted in this case, all creditors except the Campbell Brothers voted to accept the plan.

■ The Court notes that the Debtor's Plan that proposes to satisfy creditors' claims by giving to them property valued in the plan process, is not new. This type of treatment of an unsecured creditor class is specifically authorized under § 1129(b)(2)(B)(i), and, assuming the value of the property transferred is "equal to the allowed amount of such claim," such treatment would satisfy the requirement that the plan be "fair and equitable" for cram down purposes. 11 U.S.C. § 1129(b)(2)(B)(i); see also Collier on Bankruptcy ¶ 1129.05[3] ("Under section 1129(b)(2)(B)(i), the proponent must satisfy the claim in full, but is allowed to use non-cash assets, such as stock or notes or a combination of them as the medium of payment."). Thus, treatment of a class of

claims in a manner specifically authorized by the Bankruptcy Code cannot constitute evidence that a plan was not proposed in good faith. Because the Campbell Brothers did not submit any evidence in support of their contention that the Plan was not filed in good faith, the Court finds that the Debtor's Plan was proposed in good faith.

### Feasibility of the Plan

The Campbell Brothers argue that the Debtor's Plan is not feasible because (1) the value on the stock to be distributed under the plan is not accurate and (2) the proposed transfer of stock in Asgaard in satisfaction of their claims will force them to be "joined at the hip" with the Debtor and ultimately lead to a liquidation. The Court has already addressed the issue of the value of the stock to be issued under the Plan. Having found that the evidence submitted at the confirmation hearing supports a valuation of *at least* $675,000 (the combined amount of the Campbell Brothers' claims) for the 12% of the outstanding shares in Asgaard proposed to be transferred in satisfaction of the Campbell Brothers' claims, the Court rejects the Campbell Brothers' argument that the valuation somehow causes the Debtor's Plan to be not feasible.

■ The Court also rejects the Campbell Brothers' remaining contention that their ownership of stock in Asgaard will force them to be business partners with the Debtor, and, presumably because of the volatile nature of their relationship, cause a liquidation of Asgaard. The feasibility requirement in connection with a Chapter 11 plan of reorganization is found in § 1129(a)(11) which requires that the confirmation of the plan "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or

reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11); *see also In re T–H New Orleans Ltd. P'ship*, 116 F.3d at 801. It is the debtor's burden to prove the feasibility of a Chapter 11 plan by the preponderance of the evidence. *In re T–H New Orleans Ltd. P'ship*, 116 F.3d at 801 (citing *Briscoe*, 994 F.2d at 1165).

In this case the Debtor testified, without any controverting testimony or evidence from the Campbell Brothers, that the value of the shares to be transferred under the Plan to the Campbell Brothers is higher than the value, as of 2000, placed on those shares by the jury in the district court litigation. The Debtor also testified that the value will continue to grow and that it is his plan to sell Asgaard when the value of Hard Radio is maximized after further development of the web site. Because the Debtor's testimony regarding the continued growth in the value of the Asgaard stock was both credible and uncontroverted and because the Debtor appears to have a sound business plan regarding Hard Radio, the Court finds that it is not likely that this Debtor's plan will be followed by a liquidation or further reorganization of *this* Debtor. The fact that the Debtor, as a majority shareholder in the holding company of Hard Radio, plans the future liquidation of that asset does not make his Plan not feasible.[3] In fact, the liquidation of Asgaard would give them what they are asking for: cash for their claims so that they can walk away from this Debtor and his company. That they may have to wait some period of time before this may occur puts them in a position that is no different from many other unsecured creditors' positions in most Chapter 11 reorganization cases. Therefore, the Court finds that the Debtor's Plan is feasible under § 1129(a)(11).

For the foregoing reasons, the Court will confirm the plan of reorganization submitted by the Debtor over the objections of the Campbell Brothers on the condition that the confirmation order provide that the distribution of the Asgaard stock to the Class 4 claimants, including the Campbell Brothers, be in the indicated percentages of *the total outstanding shares of Asgaard*, rather than percentages "of Asgaard stock owned by Debtor." Accordingly,

**IT IS ORDERED** that the Debtor's plan of reorganization filed on September 9, 2003, be, and hereby is, **confirmed** on the condition stated herein.

It is so ordered.

---

**3.** The Court notes that § 1129(a)(11) refers to the likely liquidation or further reorganization of the *debtor*, not a company in which the debtor owns shares of stock.